SIDNEY COAL COMPANY, INC./
CLEAN ENERGY MINING
COMPANY, Appellant

v.

Jerry HUFFMAN; Hon. Lawrence F. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2006–SC–000849–WC.

Supreme Court of Kentucky.

Sept. 20, 2007.

A. Stuart Bennett, Jackson Kelly PLLC, Lexington, KY, Counsel for Appellant, Sidney Coal Company, Inc/Clean Energy Mining Company.

Ralph Roland Case, Pikeville, KY, Counsel for Appellee, Jerry Huffman.

**OPINION OF THE COURT**

An Administrative Law Judge (ALJ) determined that the claimant sustained work-related finger and foot injuries and awarded permanent partial disability benefits for the foot injury and resulting depression. The Workers' Compensation Board (Board) affirmed in part, vacated in part, and remanded for additional findings concerning impairment, TTD, and medical expenses for the finger injury; concerning the claimant's allegation of permanent, total disability; and concerning the date of maximum medical improvement (MMI) from the foot injury. The Court of Appeals affirmed.

We have concluded that the Board's decision was final and appealable because it permitted the ALJ to enter a different order concerning all of the issues for which the claim was remanded. We have also concluded that the claimant properly preserved the issues before the ALJ and that the ALJ erred by failing to make the findings that he requested. Therefore, we affirm.

The claimant was born in 1956. He earned a GED and, in 1978, began working as a coal miner. His application for benefits concerned two incidents.

On January 18, 2003, the claimant sustained a crush injury that cut the tip of his

right little finger. He was taken to the hospital and treated by Dr. Nadar, who diagnosed a crush injury with open fracture to the right distal phalanx and took the claimant off work. Dr. Nadar's records indicated that he released the claimant to return to work on February 13, 2003, advising him to wear a glove, and assigned a 1% permanent impairment rating for the injury. The employer offered no contrary evidence.

On May 1, 2003, the claimant sustained another crush injury when a 1,000–pound drive belt became dislodged and fell on his left foot. He was taken to a local hospital, transferred to Campbell–Huntington Hospital, treated, and released the following day. Dr. Shook noted on July 8, 2003, the possible onset of a complex regional pain syndrome.

The claimant testified that he was referred subsequently to Dr. Caraway, a pain management specialist. He stated that although Dr. Caraway implanted a neurostimulator on June 15, 2004, he continued to experience pain and to take pain medication. He stated that the pain worsened if he sat or stood for any length of time, that he had difficulty walking, and that he was prescribed a cane, which he kept with him always. He also stated that his pain affected his ability to concentrate, that he was diagnosed with depression due to the effects of the injury, and that he received psychiatric treatment and took medication for depression. He did not think that he could work due to his pain and need for a cane.

Dr. Templin, a specialist in occupational medicine and pain management, evaluated the claimant's foot injury on November 27, 2004. After making various clinical observations regarding abnormalities in the foot, he diagnosed a crush injury, left foot RSD/complex regional pain syndrome, and depression. He assigned a 39% impairment based on the foot under the *Guides to the Evaluation of Permanent Impairment (Guides)*, Chapter 13 (Table 13–15) noting the claimant's ability to rise and maintain a standing position with difficulty and his inability to walk without assistance. He also imposed work restrictions. Dr. Templin adopted Dr. Granacher's psychiatric opinions and assigned a 20% permanent impairment rating for depression. Under the *Guides,* the combined permanent impairment rating was 51%.

Dr. Wagner, a board-certified orthopedic surgeon, evaluated the foot injury on January 26, 2005. He diagnosed the crush injury with healed fractures to the first metatarsal head and proximal phalanx of the great toe and healed fractures to the second and third metatarsal heads. In his opinion, the claimant was at maximum medical improvement (MMI). He noted that the claimant had experienced a marked decrease in pain since the spinal cord stimulator was implanted. He assigned a 7% permanent impairment rating, citing the *Guides,* Chapter 17 (Table 17–14 and the measured loss of range of motion in the toes), and also citing Chapter 18, which addresses pain. In his opinion, the claimant's restrictions caused him to lack the physical capacity to return to work as a coal miner.

In a supplemental report, Dr. Wagner took issue with the impairment rating that Dr. Templin assigned. He stated that the rating was excessive and inappropriate under the *Guides* because there was no leg atrophy and because the claimant was able to walk. Moreover, he thought that the claimant's pain would diminish with continued use of the left foot. He noted that Dr. Templin had given the maximum rating possible under Table 13–15 although the claimant had a perfectly normal left ankle and midfoot with some decreased range of motion in the toes.

Dr. Primm, a board-certified in orthopedic surgeon, evaluated the foot injury on February 1, 2005. He diagnosed a crush injury to the left foot with an intra-articular fracture of the left metaphalangeal joint, post-traumatic degenerative disease in the metaphalangeal joint of the left great toe, and depression. Although he attributed the claimant's complaints of pain and stiffness in the toes to the injury, he stated that the complaints were disproportionate to the objective findings. He took issue with the diagnosis of a complex regional pain syndrome, explaining that if it were correct the claimant should have experienced a much greater degree of improvement after the spinal cord stimulator was implanted; should not have required 7.5 mg. Lortab tablets the day after it was implanted; and should presently exhibit disuse osteoporosis. Dr. Primm assigned a 5% permanent impairment rating and was of the opinion that Dr. Templin's reference to Table 13–15 as the basis for assigning impairment was incorrect. He agreed, however, that the claimant lacked the physical capacity to return to coal mining and recommended retraining for sedentary or light work.

Dr. Granacher, a board-certified psychiatrist, examined the claimant on October 6, 2004. He received a history that included the foot injury and the continued attempts to obtain effective treatment. He administered psychological tests, noting subsequently that the claimant's scores were valid, and he reviewed the medical records. Based on this information, he diagnosed major depression, single episode, due to a complex regional pain syndrome that was neuropathic and caused by the work-related foot injury. He assessed the current GAF at 60 and assigned a 20% (class II) permanent impairment rating based on depression.

Dr. Shraberg, a board-certified psychiatrist, examined the claimant on February 9, 2005. He also took a history, administered psychological tests, and reviewed the medical records, including Dr. Grenadier's report. Dr. Shraberg diagnosed an adjustment disorder of adult life that was associated with the work-related foot injury and subsequent placement of a spinal cord stimulator. He assessed a current GAF of 80 and concluded that the disorder warranted no permanent impairment rating. In his opinion, the claimant would require no psychiatric services after litigation of his workers' compensation and Social Security Disability claims ended.

Dr. Crystal performed a subsequent vocational evaluation. He concluded that the physicians would permit the claimant to perform light-duty or sedentary work. Moreover, he had both the physical and mental ability to perform a wide variety of entry-level, relatively low-stress jobs, with or without retraining.

The parties stipulated that the employer paid temporary total disability (TTD) benefits voluntarily after the foot injury, at the rate of $532.86 per week from May 2, 2003, through June 24, 2004, but at the rate of $477.00 per week from June 25, 2004, through August 19, 2004. They limited the contested issues to "Extent and duration" and "Overpayment of TTD."

Addressing extent and duration, the ALJ determined that the finger injury was work-related but that it had "fully resolved requiring no impairment." Turning to the foot injury, the ALJ noted that Drs. Wagner and Primm had vigorously challenged Dr. Templin's conclusions and thought that the permanent impairment rating he assigned was excessive. Although convinced that Dr. Templin had correctly diagnosed the claimant's condition and its effect on his ability to return to his former work, the ALJ found the 39% impairment rating

that he assigned to be "suspect." Relying on Dr. Wagner, the ALJ found that the injury caused a 7% impairment rating. The ALJ found Dr. Granacher to be more persuasive regarding the psychiatric claim and determined that the claimant suffered from depression that warranted a 20% impairment rating.

Turning to overpayment of TTD, the ALJ determined that the correct benefit rate was $485.63 per week. Noting that the employer overpaid for some weeks and underpaid for others, the ALJ authorized a credit against past-due benefits to the extent that there was a net overpayment. Finally, the ALJ found that the claimant was entitled to vocational rehabilitation services. Based on the previously-stated findings of fact and conclusions of law, the ALJ awarded enhanced partial disability benefits that were based upon a 27% permanent impairment rating and payable beginning on August 20, 2003, which was the day after the employer terminated voluntary benefits.

The claimant's petition for reconsideration pointed out that uncontradicted evidence from Dr. Nadar established a 1 % permanent impairment rating for the finger injury as well as a period of TTD. Yet, the opinion and order failed to address Dr. Nadar's opinions, awarded no permanent income benefits for the injury, offered no reasonable basis for concluding that the injury warranted no disability, and failed to address TTD. The claimant's petition also asserted that the ALJ failed to analyze whether the permanent disability due to his foot injury and depression was total or partial. Finally, the petition asserted that it was inappropriate to rely on Dr. Templin regarding the correct diagnosis of his condition but to award benefits using an impairment rating that was based on a different diagnosis. After the petition was denied, he raised the issues on appeal to the Board. He prevailed regarding the first two assertions, after which the employer appealed.

The court stated clearly in *Davis v. Island Creek Coal Company*, 969 S.W.2d 712 (Ky.1998), and subsequently in *Whittaker v. Morgan*, 52 S.W.3d 567, 569 (Ky.2001), that the CR 54.01 analysis no longer applies to the Board's orders of remand because the Board's role under the post–1987–Act is appellate. It matters not whether the Board directs the ALJ to take further evidence on remand or to reach a factual conclusion based on the evidence of record. A decision by the Board is final and appealable if it sets aside the ALJ's decision and either directs of authorizes the entry of a different award on remand because such a decision divests the party who prevailed before the ALJ of a vested right.

803 KAR 25:01 OP, Section 13, requires the parties to prepare "a summary stipulation of all contested and uncontested issues" and states that "[o]nly contested issues shall be the subject of further proceedings." The employer notes that the parties listed the contested issues as being: "Extent and duration" and "Overpayment of TTD." It asserts that the claim should not be remanded for additional findings regarding TTD because the claimant failed to list his entitlement to TTD beyond what the employer paid voluntarily, *i.e.*, underpayment of TTD. This argument ignores the Board's statement that it has interpreted the regulation consistently and has held that "questions regarding the appropriateness and duration of TTD are encompassed within the question of extent and duration." We are convinced that the Board's interpretation is reasonable. Mindful that the courts give great deference to an administrative agency's interpretation of its own regulations, we find no

error in that regard. *See J.B. Blanton Co. v. Lowe,* 415 S.W.2d 376 (Ky.1967).

When making findings of fact and conclusions of law regarding "the extent and duration of [the claimant's] injuries," the ALJ determined that the finger injury had "fully resolved requiring no impairment." However, the ALJ failed to consider Dr. Nadar's testimony and, therefore, failed to address the fact that Dr. Nadar kept the claimant off work until February 13, 2003, and assigned a 1% permanent impairment rating. The claimant pointed this out in his petition for reconsideration. *Mengel v. Hawaiian–Tropic Northwest & Central Distributors, Inc.,* 618 S.W.2d 184 (Ky. App.1981), stands for the principle that a fact-finder may not reject uncontroverted medical evidence without a sufficient explanation. Thus, the ALJ erred by failing to analyze the evidence and make additional findings of fact and conclusions of law concerning impairment, TTD, and medical expenses for the finger injury. Because such a remand permits the entry of a different award, the Board's order was final and appealable. Because it was also correct legally, we affirm.

The claimant testified and argued vigorously that his foot injury and depression resulted in significant impairments and caused him to be permanently and totally disabled. Yet, the ALJ's opinion and order was silent on the issue. The ALJ simply chose impairments for the foot injury and depression and awarded partial disability benefits. Although the claimant requested specific findings in his petition for reconsideration, the ALJ refused to make them. The Board determined that the claimant was entitled to findings that appropriately addressed his theory of the case and demonstrated that the ALJ considered the evidence under *McNutt Construction/First General Services v. Scott,* 40 S.W.3d 854, 859 (Ky.2001), and *Ira A. Watson Department Store v. Hamilton,* 34 S.W.3d 48 (Ky.2000), and it held that the claim must be remanded for that purpose. The Board's order of remand did not limit the ALJ to stating the reasons for awarding partial disability benefits but permitted the ALJ to enter a different award after analyzing the issue. Therefore, it was final and appealable. Although the Court of Appeals' opinion indicated that the order was not final and appealable because it did not authorize additional proof, the court affirmed the Board's decision. Therefore, we affirm. We agree that the claimant was entitled to at least some indication that the ALJ considered his theory of the case, but that is not to say that the evidence compelled a different result.

As interpreted in *Central Kentucky Steel v. Wise,* 19 S.W.3d 657 (Ky.2000), KRS 342.0011(11)(a) authorizes TTD benefits if a worker has not reached MMI and has not reached a level of improvement that would permit a return to his customary employment. It is undisputed that the claimant's foot injury rendered him temporarily totally disabled and that his condition failed to improve to the point that he could perform his customary work. Thus, the ALJ erred by failing to determine the date of MMI before addressing the employer's entitlement to a credit for the overpayment of TTD. Because the Board's order permitted the entry of a different award on remand, it was final and appealable. Because it was also correct legally, we affirm.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, SCHRODER, and SCOTT, JJ., concur.

ABRAMSON, J., not sitting.