# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 22, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

DATE 4/12/18 Kim Redmon, DC

2017-SC-000229-WC

FORD MOTOR COMPANY                                        APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                              CASE NO. 2015-CA-001903
WORKERS' COMPENSATION BOARD NO. 13-WC-01127

REGINA TENO;                                             APPELLEES
HON. JEANIE OWEN MILLER,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING AND REMANDING

An Administrative Law Judge (ALJ) dismissed Regina Teno's application for benefits finding that she failed to prove her conditions were the result of a work-related cumulative trauma injury. The Workers' Compensation Board (the Board) affirmed. The Court of Appeals reversed and remanded. Because the ALJ misconstrued the evidence and caused an error of flagrant misjustice, we affirm the Court of Appeals.

# I. BACKGROUND.

Teno was born in 1970, graduated from high school, and completed some college. Teno began working for Ford Motor Company (Ford) on August 2, 1993. Teno's first injury occurred on June 21, 1994. She suffered an upper arm sprain and a Workers' Compensation Claim was opened.

Teno worked in several capacities at Ford. Initially, she installed steering wheels. Her next task was in the Trim Shop installing chrome around windshields. Teno became pregnant and was treating with Dr. Carl D. Paige during this time. Dr. Paige noted Teno had medial epicondylitis on the right. He ordered Teno to wear an elbow strap, take Tylenol, and avoid overuse of her right elbow. In May 2004, Dr. Paige diagnosed neck pain most consistent with trapezius and cervical muscle pain, no discernible radiculopathy, and possible underlying carpals. This diagnosis came after Teno had complained of upper back pain which radiated into her neck, arms, and hands, and up to her head. X-rays were ordered showing normal cervical tissues and no congenital defect. In November 2004, Dr. Paige ordered an EMG/NCV which was consistent electrically with S-1 radiculopathy on the right.

Teno then transferred to the Paint Department, C-Crew, back to the Paint Department, and was then assigned to work the Hang Job. After truck cabs and truck beds traveled through the paint line, they would be coated in epoxy and then rinsed in other vats. When they came out of the rinse vats, Teno would have to bend over and use a tool to remove the chains carrying the cabs and beds. She testified she had to jerk up-and-down on the chains to free

2

them and hook the chains onto an overhead conveyor. Each worker had to handle approximately 2,000 chains per work shift with the chains weighing between 8.5 and 10 pounds. She was working the Hang Job when the injuries relating to this claim occurred, allegedly on February 8, 2013.

Prior to performing the chain-hang job, a ganglion cyst grew out of Teno's left wrist. Eventually the pain became severe and she was unable to straighten her hand. She went to Ford's medical clinic and was referred to Kleinert & Kutz Hand Care Center. The Kleinert doctor gave Teno a steroid injection into the carpal tunnel area of her left wrist and aspirated the fluid of the cyst. Teno has not had to seek treatment for the cyst since 2011.

Teno also saw Dr. Damon Gatewood, who referred Teno to Dr. George H. Raque. Dr. Raque provided Dr. Gatewood with radiology reports of a brain scan and cervical spine MRI. The reports showed tiny central disc protrusion indenting the thecal sac but not flattening the cord at C4-C5 and C5-C6. The report also indicated mild degenerative changes of the cervical spine.

In January 2012, Teno saw Dr. Gatewood for hand pain with nodules. Dr. Gatewood noted her peripheral neuropathy had improved and he ordered an arthritis panel. Teno testified that she continued to work the chain-hang job from November 2012 until February 2013. Teno testified that the job was strenuous and repetitious as she had to do a lot of bending, reaching and lifting. Teno testified that she felt pain in her right arm, bicep, right wrist, left wrist, left forearm and elbow from the first day on the chain-hang job. She testified that beginning in 2011, the pain would come and go. Teno bought

3

braces in November 2012 and began wearing them on both elbows and her right wrist. She reported her condition to her Team Leader in January 2013 and to her Supervisor in February 2013. By February 2013, Teno testified that the pain was constant.

After work on February 8, 2013, Teno went to the First Stop Urgent Care. She was examined by Dr. Paige who scheduled a cervical MRI. Teno's pain did not improve and she returned to the Urgent Care on Sunday where she received a steroid injection in her right wrist and right elbow. Teno returned to work on Monday and was then referred to Kleinert & Kutz where she received injections into her right wrist and elbow. The Kleinert & Kutz record indicates Teno's condition was not work-related but Teno could only perform one-handed work duty. Physical therapy was ordered and provided some relief.

On February 27, 2013, Dr. Ghias Arar, with East Lousiville Neurology, recommended Teno undergo a cervical MRI noting possible cervical radiculopathy or entrapment neuropathy in upper extremities or carpal tunnel syndrome. Dr. Arar reported the EMG/NCS showed moderate to severe carpal tunnel syndrome (R CTS). On March 12, 2013, Kleinert & Kutz diagnosed Teno with R CTS, RSF triggering and R Bicep Tendonitis. Kleinert & Kutz did not comment on causation but noted Teno's severe pain in her upper right extremity with continued labor.

On April 22, 2013, Teno saw Dr. Rachel Chase with the Kentuckiana Center for Better Bone and Joint Health. Teno was concerned about rheumatoid arthritis. Dr. Chase diagnosed trochanteric bursitis, bilaterally;

4

osteoarthritis of the knees and spine; bicep tendonitis and carpal tunnel syndrome. Teno continued to work periodically, with and without restrictions, until June 2013. Teno underwent right carpal tunnel and cubital tunnel release surgeries in August 2013. The surgeries were not beneficial and Teno was referred to the Cleveland Clinic.

The Cleveland Clinic recommended surgery for thoracic outlet compression syndrome, including a right rib resection. The surgery was scheduled but Teno canceled after consulting with other physicians. Teno treated at the Cleveland Clinic with physical therapy and chiropractic treatment for three months. Teno filed her workers' compensation claim, alleging cumulative trauma. Dr. Kamlesh Dave, at First Stop Urgent Clinic, completed a Ford disability form for Teno indicating her primary disabling diagnosis was thoracic outlet syndrome, it was caused by her current occupation, and she was to remain off work until seen by a specialist. This form was completed on June 16, 2013. At the time of the hearing, Teno was receiving Ford disability retirement benefits, Unicare, and had applied for Social Security Disability.

Teno underwent three separate independent medical examinations (IME). The first occurred on November 5, 2013 with Dr. Thomas Loeb. This IME was requested by Ford. Dr. Loeb noted that the lifting Teno performed in her job was not consistent with either carpal tunnel syndrome or cubital tunnel syndrome. Dr. Loeb could not rule out the possibility of thoracic outlet syndrome but thought Teno was suffering from an undiagnosed brachial or

5

cervical plexitis. Dr. Loeb stated the etiology is unknown and may be spontaneous, but Teno's symptomology is not work-related. He stated Teno's condition could be pre-existing and there was no objective medical evidence of work-related impairment.

On July 21, 2014, Teno presented to Dr. Warren Bilkey for an IME at the request of her own counsel. He noted the prior diagnoses of carpal tunnel syndrome, cubital tunnel syndrome, and thoracic outlet syndrome. He also diagnosed cervical strain, bilateral upper extremity strain, and myofascial pain. Dr. Bilkey stated the diagnoses were causally related to Teno's February 8, 2013 work injury as it did not appear that Teno had an active impairment affecting the neck or right upper limb prior to February 8, 2013.

On October 23, 2014, Dr. Valerie Waters conducted an IME as part of Teno's Ford Disability Plan under the union agreement. Dr. Waters diagnosed thoracic outlet syndrome and carpal/cubital tunnel syndrome, post right carpal/cubital tunnel release. After reviewing medical records and performing a physical examination, Dr. Waters' medical opinion was that Teno was suffering from a condition which totally and permanently prevents her from engaging in her regular occupation, but does not prevent her from engaging in any occupation. Dr. Waters outlined the restrictions under which she thought Teno was capable of working.

Dr. Loeb reviewed the reports of Drs. Bilkey and Waters. Dr. Loeb disagreed with any diagnosis of thoracic outlet syndrome and maintained that Teno's symptoms were not work-related.

6

The ALJ reviewed the evidence and determined that Teno had not carried her burden of showing her injury was work-related. Specifically, the ALJ found that only one expert, Dr. Bilkey, testified as to causation. The ALJ discounted Dr. Bilkey's testimony based on the statement, "It does not appear that Ms. Teno has an active impairment affecting the neck or right upper limb prior to 2/8/2013." Because the ALJ found Teno to have been suffering from right upper extremity and neck pain prior to February 2013, the ALJ was not persuaded that Teno's occupation created her current disability.

Teno appealed to the Board. The Board affirmed the ALJ, holding that there was substantial evidence to support the ALJ's finding. Teno appealed to the Court of Appeals. The Court of Appeals reversed and remanded for further proceedings, holding that the ALJ flagrantly discounted Dr. Bilkey's testimony causing a gross injustice to Teno. After reviewing the volumes of evidence and the applicable law, we affirm the Court of Appeals.

## II. STANDARD OF REVIEW.

The ALJ, as fact finder, has the sole authority to determine the weight, credibility, substance and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Teno, as the claimant, had the burden of proving every element of her claim, including that her condition was caused by a work-related injury. *Gibbs v. Premier Scale Co./Indiana Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001). If the claimant does not prevail with the ALJ, on appeal she must show that the evidence was so overwhelming that no reasonable person could have failed to be persuaded by

7

it. *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).[1]  However,

deference will only be given to the ALJ's decision if she has not "overlooked or

misconstrued controlling statutes or precedent, or committed an error in

assessing the evidence so flagrant as to cause gross injustice." *W. Baptist

Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## III. ANALYSIS.

### A. The ALJ failed to demonstrate an accurate analysis of the evidence.

It is true that conflicting evidence was presented in this case.  Teno

presented evidence from Drs. Bilkey and Dave indicating Teno's injuries were

caused by her occupation.  Ford, on the other hand, presented evidence from

Kleinert & Kutz and Dr. Loeb to the contrary.  Causation requires a factual

determination, *see Markwell & Hartz, Inc. v. Pigman*, 473 S.W.2d 842, 846 (Ky.

1971), and "an ALJ is vested with broad authority to decide questions involving

causation." *Miller v. Go Hire Employment Dev., Inc.*, 473 S.W.3d 621, 629 (Ky.

App. 2015).  Generally, an ALJ may pick and choose the evidence on which to

---

[1] The dissent questions the scope of review of this Court and cites to the same quotation contained in *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986).  The dissent also cites to *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005).  While these two cases do state that Teno must show the evidence in her favor was so overwhelming that it compelled a different finding, this proposition must be considered in light of the complete opinion.  In *Gray*, the ALJ dismissed claimant's application for benefits finding there was no compensable injury. *Id*. at 237.  Despite stating the above standard for a claimant who loses before the ALJ, the *Gray* Court went on to say:

> Mindful that an ALJ may pick and choose among the witnesses' testimonies, we note that the ALJ could have determined from the evidence that the "injury" to which the employer admitted resulted in the impairment that Dr. Owen measured. If so, the claimant would have been entitled to income benefits. **The evidence did not compel such a result**, but by dismissing the claim for lack of a compensable "injury," the ALJ failed to even consider that possibility and must do so on remand. (emphasis added). *Id*. at 243.

We find the *Gray* case more supportive of the majority's position when analyzed in the context of the entire opinion.

8

rely, rejecting any testimony and believing or disbelieving various parts of the evidence. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). Had the ALJ decided to rely on Ford's evidence over Teno's, we would not disturb that decision.

However, that is not what the ALJ did here. Instead of finding some experts more reliable than others, the ALJ's decision was based on erroneous conclusions and on the discounting of Dr. Bilkey's report. As stated above, Teno presented evidence from Dr. Bilkey and Dr. Dave supporting her contention that her injury was due to her current occupation. Further, ample circumstantial evidence was entered supporting Teno's contention and an ALJ has the authority "to infer causation from properly admitted evidence." *Dravo Lime Co., Inc. v. Eakins*, 156 S.W.3d 283, 289 (Ky. 2005). The ALJ's opinion states that "the causal relationship testimony comes from only one medical witness, Dr. Bilkey." This is not correct.

The ALJ continued by saying Dr. Bilkey does not explain how or why the work activity caused the pain. Again, this is not correct. Dr. Bilkey's July 21, 2014 IME states that Teno's pain is in relation to a new job duty that had her doing repetitive lifting of heavier items than usual, unhooking and beating loose this chain. This is consistent with the Court of Appeals' holding. Although an ALJ has broad authority to find an expert lacking credibility or unbelievable, the ALJ's statements here lead to the inevitable conclusion that she misconstrued and misunderstood the evidence before her. With such an

9

erred conclusion, we have no choice but to reverse her decision, as the Court of Appeals has done.

**B.  The ALJ misconstrued Dr. Bilkey's report, or in the alternative, failed to demonstrate an understanding of the legal consequences of Dr. Bilkey's report.**

The ALJ's opinion does not prove to this Court that the ALJ fully understood Dr. Bilkey's report.  The ALJ stated: "It is apparent Plaintiff has been actively treated for neck and upper extremity pain as early as 2004. . . . Dr. Bilkey states: 'It does not appear that Ms. Teno has an active impairment affecting the neck or right upper limb prior to 2/8/2013.'  Without the history of previous similar symptoms and the [*sic*] any connection of those symptoms to work activities, Dr. Bilkey's opinion becomes less than persuasive."

It appears that because Teno had previously treated for similar injuries, Dr. Bilkey's statement regarding no active impairment seemed less credible to the ALJ.  A reviewing court is in no position to second guess the ALJ's credibility determination.  However, this Court has held that "impairment" and "disability" are not synonymous.  *Roberts Bros. Coal Co. v. Robinson*, 113 S.W.3d 181, 183 (Ky. 2003).  This reasoning is supported by the fact that Kentucky Revised Statute (KRS) 342.730(1)(a) "requires the ALJ to determine the worker's disability, while KRS 342.730 (1)(b) requires the ALJ to determine the worker's impairment."  *Id.*  "For that reason, if an individual is working without restrictions at the time a work-related injury is sustained, a finding of pre-existing impairment does not compel a finding of pre-existing disability with regard to an award that is made under KRS 342.730(1)(a)."  *Id.*

10

The work-related arousal of a pre-existing condition into disabling reality is compensable. *Finley v. DBM Technologies*, 217 S.W.3d 261, 265 (Ky. App. 2007) (citing *McNutt Construction/First Generation Servs. v. Scott*, 40 S.W.3d 854 (Ky. 2001)). "To be characterized as active, an underlying pre-existing condition must be symptomatic *and* impairment ratable pursuant to the AMA Guidelines immediately prior to the occurrence of the work-related injury." *Id.* (emphasis in original).

> Alternatively, where the underlying pre-existing disease or condition is shown to have been asymptomatic immediately prior to the work-related traumatic event *and* all of the employee's permanent impairment is medically determined to have arisen after that event— due either to the effects of the trauma directly or secondary to the medical treatment necessary to address previously nonexistent symptoms attributable to an underlying condition exacerbated by the event—then as a matter of law the underlying condition must be viewed as previously dormant and aroused into disabling reality by the injury. *Id.* (emphasis in original).

Teno was working without restrictions at the time of her February 2013 work injury. As the Court of Appeals pointed out, Dr. Bilkey reviewed Teno's past medical records and determined she had no active impairment. "That Teno had in the past sought treatment for her upper extremities does not mean that she was experiencing any active impairment at the time she claimed to have sustained her injury at Ford." *Teno v. Ford Motor Company*, No. 2015-CA-001903-WC, 2017 WL 1533793, at *1, *6 (Ky. App. April 28, 2017). While the ALJ recited a thorough history of Teno's symptoms and prior medical treatment, it is not clear to this Court that the ALJ understood the significance of Dr. Bilkey's statement. The ALJ made no findings as to whether or not Teno

11

was suffering from a pre-existing condition that became aroused by her performance of the chain-hang job.

Because the ALJ's opinion did not rely on any evidence other than Dr. Bilkey, and because the ALJ did not demonstrate an understanding of the legal conditions of "disability" and "impairment," this Court agrees with the Court of Appeals and reverses. Again, it is not for this Court to weigh the evidence, but instead we remand for the ALJ, as fact-finder, to reconsider in light of this opinion.

Even though this Court is affirming the Court of Appeals and remanding this matter for further consideration by the ALJ, we now address additional issues that are likely to recur on remand. *Springer v. Commonwealth*, 998 S.W.2d 439, 445 (Ky. 1999).

## C. The ALJ shall make findings that relate to Teno's theory of the case.

Teno argues that the ALJ and Board misinterpreted the medical and lay evidence, particularly in the fact that the ALJ did not make a finding as to whether Teno suffered from thoracic outlet syndrome. It is logical in a workers' compensation case that the ALJ will first determine if the claimant is suffering from an injury before the ALJ will determine if that injury was caused by the claimant's job. Here, the ALJ made general findings of pre-existing back and upper extremity injuries. But the ALJ did not make any findings on the diagnoses of CTS or thoracic outlet syndrome. Teno was entitled to findings that appropriately address her theory of the case. *Sidney Coal Co., Inc./Clean Energy Mining Co. v. Huffman*, 233 S.W.3d 710, 714 (Ky. 2007). Therefore, on

12

remand, sufficient findings must be made to demonstrate the ALJ considered all of the evidence. *See id.*

As stated above, no deference is owed to an ALJ's decision when the ALJ commits an "error in assessing the evidence so flagrant as to cause gross injustice." *Kelly*, 827 S.W.2d at 687-88. After reviewing the record and the ALJ's opinion, it is apparent to this Court that the ALJ erred in assessing the evidence. The only remedy this Court can bestow is to allow Teno to receive a comprehensive and proper review of the evidence upon remand.

## IV. CONCLUSION.

This opinion does not order the ALJ to enter a finding for Teno. However, the ALJ is required to prove a thorough consideration of all of the evidence, including causation, and delineate a sufficient basis for the ALJ's opinion. For the above stated reasons, we affirm the Court of Appeals and remand this case to the ALJ for further proceedings consistent with this opinion.

All sitting. Cunningham, Keller, Venters and Wright, JJ., concur. VanMeter, J., dissents by separate opinion in which Minton, C.J. and Hughes, J., join.

VANMETER, J., DISSENTING: I respectfully dissent. In *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005), this court held that if the ALJ finds against the party having the burden of proof, the appellant must "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding." In my view, the majority

13

opinion effectively ignores this standard of review. I would reverse the Court of Appeals opinion.

Minton, C.J., and Hughes, J., join.

COUNSEL FOR APPELLANT:

George T. Kitchen III
Reminger Co., LPA

COUNSEL FOR APPELLEE:

Nicholas Murphy
Jennings Law Offices

14