RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0332-WC

TERRY HALL                                        APPELLANT


|  | ON APPEAL FROM COURT OF APPEALS |  |
|---|---|---|
| V. | NO. 2023-CA-0198 |  |
|  | WORKERS' COMPENSATION BOARD |  |
|  | NO. WC-18-00635 |  |


BPM LUMBER, LLC; JONATHAN R.                    APPELLEES
WEATHERBY, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

The Administrative Law Judge ("ALJ") dismissed Terry Hall's claim for permanent occupational disability benefits. Hall appealed to the Workers' Compensation Board ("Board") on four issues. On July 22, 2022, the Board issued an Order Affirming in Part, Vacating in Part, and Remanding. Hall did not appeal this Order to the Court of Appeals. Thereafter, the ALJ rendered a Second Amended Opinion and Order in line with the remand Order, which Hall then appealed to the Board. The Board affirmed the ALJ, and Hall sought review on all issues with the Court of Appeals. The Court of Appeals held the Board's initial July 22, 2022, Order was final and appealable. Upon review of the briefs, the record, and the law, we find no error and therefore affirm.

# I. FACTS AND BACKGROUND

Hall began working for BPM Lumber, LLC ("BPM Lumber"), formerly Pine Mountain Lumber, in 2000. Hall worked in various roles during his first three years. He stacked lumber, did general clean-up, and operated the debarking machine. Ultimately, Hall was assigned to operation of the slab saw, where he stayed for approximately thirteen years.

Hall was terminated from BPM Lumber on July 24, 2015, following a failed drug test in which he tested positive for marijuana. On April 19, 2018, Hall subsequently filed an Application for Resolution of an Occupational Disease Claim (Form 102) against BPM Lumber alleging he sustained cognitive issues, dementia, tremors, headaches, neurological dysfunction, chronic obstructive pulmonary disease ("COPD") and skin rashes in the course of his employment duties.

The ALJ held a Benefit Review Conference on November 5, 2021, and a Formal Hearing on December 8, 2021. Hall testified that he sustained his alleged work-related injuries from his exposure to the mixture of hydraulic fluid and diesel fuel that he alleges was used to lubricate the slab saw blade that he operated. Hall testified that he operated the slab saw from inside an enclosed cab, which was often smoky and caused him to frequently leave work smelling like diesel fuel. Further, as support for his claim, Hall relied on evidence of the lubricant he was exposed to and presented the findings of five doctors: Dr. A. Berry Klein, Dr. Bruce Broudy, Dr. William George, Dr. Paul Ebben, and Dr. Joseph Zerga.

2

Dr. Klein's opinion was the only one to support the work-relatedness of Hall's alleged injuries. Hall's medical records with Dr. Klein outlined Hall's symptoms and medical conditions following his employment with BPM Lumber. These symptoms included autoimmune urticaria and rash, blistering of the skin, anorexia, sixty-pound weight loss, insomnia, headaches, seizure disorder, anxiety, and parkinsonian features among others. Dr. Klein concluded that Hall was permanently disabled from any gainful employment. Specifically, he found that Hall's neurologic and skin conditions were directly related to his exposure to the hydraulic fluid and diesel fuel mixture Hall used as a saw lubricant.

Dr. Broudy found that Hall had 0% respiratory impairment due to his employment with BPM Lumber but found some impairment existed as a result of Hall's cigarette use. Dr. George, a pharmacological toxicologist, found that there was no validated scientific evidence to support any causal connection between Hall's exposure to hydraulic fluid and diesel fuel and his neurologic dysfunction symptoms. Dr. Ebben's findings aligned with those of Dr. Broudy and Dr. George. He conducted various cognitive tests on Hall and found that Hall's performance on the tests indicated "a lack of optimal effort." As a result, Dr. Ebben determined that the tests were unhelpful and that there was no objective documentation to conclude that Hall's conditions were caused by any alleged exposure to hydraulic fluid or diesel fuel. Finally, Dr. Zerga found that Hall had no neurological condition at all and concluded there was no evidence that Hall had any cognitive issues. He determined that any fluids Hall was

3

exposed to should be evaluated by a toxicologist. Additionally, Dr. Zerga recommended that Hall should have a neuropsychological evaluation.

Regarding his claim for loss of lung function, Hall presented the University Evaluation of Dr. Bogdan Moldoveanu ("University Evaluator"). In this report, the University Evaluator assessed a 10% impairment due to the loss of pulmonary function and concluded that Hall should avoid contact with wood dust, diesel fumes, cigarette smoke, and moldy and dusty environments. Notably, the University Evaluator completed this report with the initial belief that Hall had only smoked for seven years, and that he had quit smoking. As a result, the University Evaluator found Hall to have a 10% lung impairment completely related to occupational asthma as complicated by his work environment. After learning of Hall's significant smoking history, the University Evaluator filed a supplemental report in which he conceded that Hall's actual smoking history "would be a significant contributor to the impairment."

Hall's claim was thereafter submitted to ALJ Jonathan R. Weatherby for a decision. The contested issues involved benefits under KRS 342.730, work-relatedness and causation, notice, average weekly wage, statute of limitations, and proper use of the AMA Guidelines.

On February 6, 2022, ALJ Weatherby issued an Opinion and Order dismissing Hall's claims. The ALJ weighed the conflicting medical testimony concerning the cause of Hall's conditions, and ultimately concluded that the opinions of Drs. Ebben, Zerga, and George outweighed that of Dr. Klein. As a result, the ALJ found that Hall had failed to sustain his burden to establish the

4

work-relatedness of his neurocognitive condition. Further, the ALJ then found that Hall's respiratory impairment was not causally work-related, stating, in relevant part:

28. The ALJ finds that the history relied upon by Dr. Moldoveanu was not complete because he initially believed the Plaintiff had only seven years of smoking history which had ceased. Dr. Moldoveanu therefore found that the Plaintiff's lung impairment of 10% was completely related to occupational asthma as complicated by the work environment. He admitted in his supplemental report however that the Plaintiff's actual smoking history would be a significant contributor to the impairment.

29. Despite Dr. Moldoveanu's admission that there was a significant contributing factor, he made no revision to his ultimate determination of impairment. The ALJ therefore finds due to this inconsistency, that the findings of the [U]niversity [E]valuator are outweighed by the consensus of opinion reached by Drs. Zerga and Broudy. The ALJ thus finds that Hall's respiratory impairment was not causally work-related.

On January 28, 2021, the ALJ granted BPM Lumber's Motion to Strike a Portion of Dr. Klein's Report in which he references "Spectrography of Lubricant." The "Spectrography of Lubricant" refers to the lab results from "[a] sample of hydrocarbon lubricating material from Mr. Terry Hall's workplace [that] was sent for chemical analysis to the University of Louisville Chemical Engineering Department." Hall testified that he took the sample of the lubricant mixture from BPM Lumber a week prior to his termination. According to his testimony, Hall let the sample sit in his garage for three years before he eventually turned it over to his attorney, who then sent it out for chemical analysis. The ALJ granted BPM Lumber's Motion to Strike due to the absence of proper authentication.

5

Following the dismissal of his claims and the grant of BPM Lumber's Motion to Strike, Hall filed a petition for reconsideration, which the ALJ subsequently denied. Hall then sought review before the Board, arguing that the ALJ erred in (1) relying on medical opinions based on corrupt histories, (2) striking the lab results of a lubricant sample, (3) rejecting the University Evaluator's findings without a proper basis, and (4) dismissing the petition.

On July 22, 2022, the Board addressed each argument in turn, and ultimately affirmed in part and vacated in part the ALJ's decision. Turning to Hall's first argument, the Board concluded that "[w]hile Dr. Klein offered a different opinion, the ALJ chose to rely on Drs. Zerga, George, and Ebben and found Hall failed to establish the work-relatedness of his alleged neurocognitive condition. Accordingly, we do not find error in the ALJ's reliance on Drs. Zerga, George, and Ebben." Next, in response to Hall's second argument about the alleged improper striking of the lab results of the lubricant sample, the Board reviewed Kentucky Rule of Evidence ("KRE") 901 concerning authentication and upheld the decision of the ALJ:

> Though Mrs. Hall testified she and her husband brought the sample to the deposition, Hall did not offer any chain of custody regarding how it reached the lab, and there has not been any testimony from lab personnel. The lack of specific evidence as to the authentication of the mixture itself, the chain of custody to the lab, or lab personnel describing the testing performed and instruments used support the ALJ's decision to strike reference to the lab report.

After dispensing with Hall's first two arguments, the Board then remanded the remaining portion of Hall's claim to the ALJ with instructions to provide a more detailed explanation of his rejection of the University Evaluator's report:

6

Accordingly, the claim is remanded to the ALJ to further elucidate his findings and opinion regarding whether Hall has proven the elements of his claim for an occupational disease. Clearly, the rejection of the University Evaluator's report is the heart of the matter. The ALJ must issue sufficient reasons for this rejection when he dismissed the claim for pulmonary impairment.

Neither party appealed from this opinion of the Board.

On September 23, 2022, the ALJ rendered an Amended Opinion and Order on Remand providing a more detailed explanation of his rejection of the report of the University Evaluator. Specifically, the ALJ included the following additional findings:

29. Dr. Broudy credibly criticized Dr. Moldoveanu's finding of a work-related occupational disease and related any respiratory impairment solely to the Plaintiff's significant history of smoking. Dr. Broudy also credibly remarked that the Plaintiff's effort was suboptimal on the pulmonary function tests performed by the University of Louisville as well as those conducted thereafter by Dr. Moldoveanu.

30. Dr. Broudy referenced the Plaintiff's heavy smoking history and related cough with sputum production to conclude that any impairment would be due to the Plaintiff's smoking alone. The suboptimal effort and sputum production were not referenced or explained by Dr. Moldoveanu nor did he reference or attribute any impairment to the Plaintiff's smoking history despite his own assertion that said history would contribute to the Plaintiff's impairment.

31. The ALJ is therefore convinced by Dr. Broudy's opinion and finds that the conclusions of the [U]niversity [E]valuator are outweighed by the more thorough and credible opinion of Dr. Broudy. The ALJ thus finds that Hall's respiratory impairment was not causally work-related.

As a result of these findings, the ALJ again dismissed Hall's occupational disease claims. Hall filed a petition for reconsideration, which the ALJ later denied. However, on October 17, 2022, the ALJ did enter a Second Amended

7

Opinion and Order on Remand following Hall's petition in order to correct a few "inadvertent errors."[1] Hall again appealed to the Board, and on January 20, 2023, the Board affirmed the ALJ's Amended Opinion and Order, holding that "[t]he ALJ provided the additional analysis requested and adequately explained the basis for his determination."

Following the Board's decision, Hall appealed to the Court of Appeals, where he raised similar issues to those that he initially advanced in his first appeal to the Board. Hall argued that the ALJ erred by (1) adopting medical evidence which was corrupt; (2) erroneously excluding evidence of the lubricant mixture; (3) not striking reference to a medical licensure board proceeding relating to Dr. Klein; and (4) failing to cite any evidence truly rebutting the University Evaluator's opinion. Prior to addressing the merits of Hall's arguments, the Court of Appeals concluded that Hall was precluded from raising his first two arguments. Specifically, the Court of Appeals held:

> Hall raised both of those issues in his initial appeal to the Board. The Board decided them on the merits as set forth above. The Board's July 22, 2022, Opinion Affirming in Part, Vacating in Part, and Remanding was final and appealable. . . . Thus, the law of the

---

[1] The correction of these "inadvertent errors" merely involved the correction of a typo and a slight modification to Paragraph 30. As for the typo, the ALJ had mistakenly referred to Dr. Broudy, instead of Dr. Moldoveanu in Paragraph 11. Paragraph 30 was also amended to state as follows:

> 30. Dr. Broudy referenced the Plaintiff's heavy smoking history and related cough with sputum production to conclude that any impairment would be due to the Plaintiff's smoking alone. The suboptimal effort and sputum production were not referenced or explained by Dr. Moldoveanu. *Dr. Moldoveanu admitted that he was not sure what allergens were to blame for the Plaintiff's asthma symptoms and added that the source of his asthma would be difficult to prove or disprove.*

> (emphasis added).

8

case doctrine precludes Hall from raising those issues again on a subsequent appeal following the ALJ's decision on remand.

*Hall v. BPM Lumber, LLC*, No. 2023-CA-0198-WC, 2023 WL 4140088, at *7-8 (Ky. Ct. App. June 23, 2023). Despite this holding, the Court of Appeals then went on to consider both issues on the merits and affirmed the Board. The Court of Appeals then turned to Hall's third and fourth arguments. It held that Hall's argument concerning reference to the medical licensure board proceeding was unpreserved and therefore beyond its purview. Finally, it affirmed the Board on the fourth issue. This appeal followed.

## II.     STANDARD OF REVIEW

While workers' compensation proceedings are created by statute and thereby administrative in nature, *Whittaker v. Reeder*, 30 S.W.3d 138, 143 (Ky. 2000), the ALJ is "empowered to function the same as a trial court trying a case without a jury" with the Board "to carry out the same functions as an intermediate court reviewing the decisions of a court of original jurisdiction, to perform the error correcting function normally assigned to the Kentucky Court of Appeals, lacking only the power of constitutional review." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992); *see also generally* KRS 342.275-.290.

The workers' compensation appellate process is governed by the statutes set forth in KRS Chapter 342. *See* KRS 342.285-.290. Thus, appeal from an ALJ's decision to the Board is a matter of legislative grace. *Lexington Fayette Urb. Cnty. Gov't v. Gosper*, 671 S.W.3d 184, 198 (Ky. 2023). In an appeal of an ALJ's decision, the Board is limited to determining whether:

9

(a) The administrative law judge acted without or in excess of his powers;

(b) The order, decision, or award was procured by fraud;

(c) The order, decision, or award is not in conformity to the provisions of this chapter;

(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or

(e) The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

KRS 342.285(2). Board decisions are then subject to judicial review by the Court of Appeals "pursuant to Section 111 of the Kentucky Constitution and rules adopted by the Supreme Court." KRS 342.290.

In turn, the final decisions of the Court of Appeals in workers' compensation matters may then be appealed to this Court under Section 115 of the Kentucky Constitution, as a matter of right. *Vessels ex rel. Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990). Although the right to appeal to this Court is constitutionally mandated, our review is limited to the determination of "new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *W. Baptist*, 827 S.W.2d at 688. We review questions of law *de novo*. *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 232 (Ky. 2016).

10

## III. ANALYSIS

Hall appeals to this Court and argues, as he did before the Court of Appeals, that the ALJ erred by (1) adopting medical opinions which were factually corrupt; (2) erroneously excluding evidence of the lubricant mixture; (3) not striking reference to a medical licensure board proceeding relating to Dr. Klein; and (4) failing to cite any evidence truly rebutting the University Evaluator's opinion. BPM Lumber counters that Hall failed to timely appeal these claims and is, therefore, precluded from raising them now. Accordingly, as a preliminary matter, we must consider whether Hall's claims are properly before this Court.

In workers' compensation proceedings, "[t]he decision of the [B]oard shall be subject to review by the Court of Appeals." KRS 342.290. This statute does not state *when* the Board's decisions are ripe for such review. In the absence of explicit language, we have interpreted the meaning of KRS 342.290 in accordance with the legislative intent and held that "a Board opinion is final if it divests a party of a vested right by setting aside an ALJ's award or by authorizing or requiring the entry of a different award on remand." *Hampton*, 489 S.W.3d at 234. Further, we have held that where a Board's order contains multiple directives, the finality of the order is analyzed under the law of the case doctrine. *Whittaker v. Morgan*, 52 S.W.3d 567, 569 (Ky. 2001).

We continue to adhere to these standards and apply them to the facts before us. The issue we must address, therefore, is whether an order of the Board

which affirms in part, vacates in part, and thereafter remands is final and appealable.

## A. The portions of the Board's order affirming the ALJ were the law of the case, and thus final and appealable.

A fundamental distinction exists between workers' compensation law and other administrative agency law. Workers' compensation serves as an alternative mechanism for resolving tort claims brought by injured workers, which inherently requires an approach distinct from other administrative agency frameworks. *See Newberg v. Weaver*, 866 S.W.2d 435, 436 (Ky. 1993) ("It is well established that the Workers' Compensation Act is social legislation which encompasses a number of public policy considerations."). It is for this very reason that the legislature enacted the extensive provisions set forth in KRS Chapter 342.

Following the 1987 amendments to the Workers' Compensation Act,[2] this Court addressed the new role of the Board and determined when a decision of the Board is final and appealable in *Davis v. Island Creek Coal Co*, 969 S.W.2d 712 (Ky. 1998). In *Davis*, the claimant was awarded retraining incentive benefits when the employer failed to file a notice of resistance within sixty days. *Id*. at 713. The Board reversed the award and remanded the claim to the ALJ to assess whether there was "good cause" for the employer's failure to timely

---

[2] The 1987 amendments to the Workers' Compensation Act restructured the workers' compensation process. These amendments introduced ALJs as factfinders, shifting the Board's role from factfinding to serving as an appellate review body. Moreover, the amendments required that any party aggrieved by a Board ruling must now appeal directly to the Court of Appeals, instead of the circuit court, for review.

contest the claim. *Id.* The Court of Appeals held that because the Board did not "finally dispose of the claim," it was not a final and appealable order. *Id.*

To determine the Board's new role after the 1987 revision, we examined pre-1987 cases that addressed when a circuit court's order[3] remanding a case to the Board was considered final and appealable to a higher court. Utilizing these decisions for guidance, we held that an order of remand by the Board is final and appealable when it "deprive[s] a party of a vested right." *Id.* at 713. This deprivation occurs when the Board's order either sets aside the ALJ's award or authorizes the ALJ to enter a different award. *Id.* However, where the Board's order merely remands the case to the ALJ "with directions to comply with statutory requirements without authorizing the taking of additional proof or the entry of a different award, the order [is] interlocutory and not appealable." *Id.* at 714.

We applied this precedent in *Sidney Coal Co., Inc./Clean Energy Mining Co. v. Huffman*, 233 S.W.3d 710 (Ky. 2007). There, the claimant suffered a crush injury that cut the top of his right little finger, as well as a crush injury to his left foot. *Id.* at 711-12. The ALJ found that the claimant's finger injury had no impairment but did not address the uncontroverted medical evidence presented by the claimant concerning such injury. *Id.* at 714. The claimant then raised this issue before the Board. *Id.* Upon examination of the case, the Board remanded the claim to the ALJ for additional findings "that appropriately

---

[3] Prior to 1987, the circuit court performed the review function now fulfilled by the Court of Appeals.

13

addressed [the claimant's] theory of the case and demonstrated that the ALJ considered the evidence" concerning the claimant's finger injury. *Id.* Notably, this order by the Board "did not limit the ALJ to stating the reasons for awarding partial disability benefits but permitted the ALJ to enter a different award after analyzing the issue." *Id.* Thus, in line with *Davis*, this Court held that the Board's order was final and appealable, as it permitted entry of a different award on remand and thereby "divested the party who prevailed before the ALJ of a vested right." *Id.* at 713-14.

While both *Davis* and *Sidney Coal* considered when the Board's order of remand qualifies as a final and appealable order, the present case before us differs. Here, the issue is not limited to a simple remand; rather, the Board both affirmed the ALJ on certain issues and vacated and remanded on others. Accordingly, our decision in *Whittaker v. Morgan*, 52 S.W.3d 567 (Ky. 2001) is more on point.

In *Morgan*, the claimant sought compensation for coal workers' pneumoconiosis and settled the matter with the employer and the Special Fund for a 75% occupational disability. *Morgan*, 52 S.W.3d at 568. However, the claimant later reopened the case due to increased impairment. *Id.* After hearing the new evidence, the ALJ found the claimant to be totally impaired. *Id.* No credit was given to the respondents for overlapping benefits payable under the settlement. *Id.* The Special Fund petitioned for reconsideration to have the credit applied, but ultimately was denied. *Id.*

14

The Board agreed with the Special Fund that the respondents were entitled to a credit and reversed the ALJ's decision to the contrary. *Id.* However, the Board disagreed with the Special Fund's argument for how the credit should be calculated, and instead found the credit should be calculated under KRS 342.125(2)(b). *Id.* The Board remanded the claim and ordered the ALJ to calculate the credit in accordance with the statute. *Id.* The Special Fund thereafter appealed the Board's decision to the Court of Appeals, and subsequently, to this Court. *Id.* at 569. Importantly, we noted that "the Board's decision divested the claimant of his victory before the ALJ on the question of credit ... [but] did not divest the Special Fund of anything that the ALJ had previously decided in its favor." *Id.* As a result, we held that the *Davis* analysis did not apply, and instead determined that the finality of the Board's decision turned on whether, absent an appeal, the decision would become the "law of the case,"[4] and the Special Fund would thereafter be barred from questioning the Board's calculation of the credit. *Id.*

We have upheld the line of reasoning employed by this Court in *Davis*, *Sidney Coal*, and *Morgan* as recently as 2016 in *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230 (Ky. 2016). In *Hampton*, we clarified the rule set forth in *Davis* and reinforced its precedential value. The issue before this Court in

---

[4] The law of the case doctrine stands for the principle that "if an appellate court has passed on a legal question and remanded the cause [sic] to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case." *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982) (citation omitted).

15

*Hampton* was whether, absent a specific order or authorization, a Board's opinion vacating the ALJ's opinion and remanding for additional proceedings was final and appealable. *Id.* at 232. There, the ALJ awarded the claimant permanent total disability benefits, and Flav-O-Rich appealed to the Board arguing the ALJ failed to make sufficient findings of fact. *Id.* at 231.

We reaffirmed the rule from *Davis*, holding that "a Board opinion is final if it divests a party of a vested right by setting aside an ALJ's award **or** by authorizing or requiring the entry of a different award on remand." *Id.* at 234. In reaching this conclusion, we also upheld *Morgan's* holding that a Board order containing multiple distinct directives should be analyzed for finality under the law of the case doctrine. *Id.* Following this reasoning, we determined in *Hampton* that the Board's order vacating the ALJ's opinion was final, as it effectively divested the claimant of his permanent total disability award. *Id.*

Here, the claimant, Terry Hall, sought permanent occupational disability benefits as the result of an alleged work-related injury that occurred on July 24, 2015, in the course of his employment for BPM Lumber. Hall presented medical records, lay witness testimony, and his physicians' testimonies before the ALJ. The ALJ dismissed Hall's claim, and subsequently dismissed Hall's petition for reconsideration. Hall then sought review before the Board, arguing the ALJ erred in (1) relying on medical opinions based on corrupt histories, (2) striking the lab results of a lubricant sample, (3) rejecting the University Evaluator's findings without a proper basis, and (4) dismissing the petition.

16

On July 22, 2022, the Board addressed each argument in turn, and ultimately affirmed in part and vacated in part the ALJ's decision, and then remanded for a more detailed explanation of the ALJ's reasoning for rejecting the University Evaluator's report and dismissing Hall's claim. Specifically, the opinion of the Board stated:

> For the foregoing reasons, we affirm the ALJ's dismissal of Hall's injury claim for neurocognitive and related conditions. We also affirm the striking of the lab report; however, we vacate the portion of the Opinion rejecting the University Evaluator's opinion and dismissing Hall's claim for occupational disease. We remand for a more detailed explanation of the ALJ's basis for rejecting the University Evaluator's report.

The Board's opinion contains three separate directives: affirm, vacate, and remand. Thus, we must apply *Morgan* rather than *Davis*. The first two issues raised by Hall were conclusively decided on the merits when the Board affirmed the ALJ's decision on both issues. As a result, the ALJ was bound to follow the Board's rulings regarding both the affirmed issues and the mandates of the remand. *See Inman,* 648 S.W.2d at 849. Therefore, although the Board's rulings on these issues did not deprive Hall of any vested rights, the Board's decision to affirm, vacate, and remand was nevertheless final under the law of the case doctrine. *Morgan,* 52 S.W.3d at 569. Because Hall failed to immediately appeal these issues to the Court of Appeals, he forfeited his ability to raise them again in a subsequent appeal. *Inman,* 648 S.W.2d at 849 ("Thus, if, on a retrial after remand, there was no change in the issues or evidence, on a new appeal the questions are limited to whether the trial court properly construed and applied the mandate.").

17

Before this Court, Hall now raises four issues. He argues that the ALJ erred by (1) adopting medical evidence which was corrupt; (2) erroneously excluding evidence of the lubricant mixture; (3) not striking reference to a medical licensure board proceeding relating to Dr. Klein; and (4) failing to cite any evidence truly rebutting the University Evaluator's opinion. Because this case involves a remand order coupled with no change in the issues or evidence, the only question we need ask in addressing Hall's arguments is whether the ALJ "properly construed and applied the [remand] mandate." *Inman*, 648 S.W.2d at 849.

Hall's fourth argument, concerning the ALJ's alleged failure to state any rebuttal evidence, is the only issue within the scope of whether the ALJ properly interpreted and applied the remand mandate. As a result, Hall is precluded from raising his first three arguments in this appeal, given the finality of the Board's July 22, 2022, Opinion Affirming in Part, Vacating in Part, and Remanding. In that Order, the Board upheld the ALJ's dismissal of Hall's injury claim for neurocognitive and related conditions, as well as the striking of the lab report. Furthermore, while the Board did not explicitly affirm the ALJ's decision permitting BPM Lumber to reference Dr. Klein's suspension by the Kentucky Medical Board, its affirmation of the ALJ's broader findings necessarily resolved this issue. Consequently, the Board's July 22, 2022, Order conclusively settled all three issues, and Hall's failure to timely appeal the Order bars him from raising these issues on a subsequent appeal.

As for Hall's fourth argument regarding an alleged absence of rebuttal evidence stated by the ALJ, it fails to warrant review in this Court. It does not present a new or novel question of law, suggest precedent warranting reconsideration, nor does it involve a question of constitutional magnitude. *W. Baptist*, 827 S.W.2d at 688. Regardless, even if we were to review this argument on the merits, we would affirm the Court of Appeals on this issue, because it is clear that the "[t]he ALJ provided the additional analysis requested and adequately explained the basis for his determination." Hall's argument here is nothing more than an attempt to circumvent the true issue at the heart of this case: the finality of the Board's July 22, 2022, Order.

While we must adhere to Section 115 of the Kentucky Constitution mandating a matter of right appeal for workers' compensation claims, "we need not obstruct legislative intent unnecessarily, nor should we encourage multiple appeals of the same issue." *W. Baptist*, 827 S.W.2d at 687. In conducting our review, therefore, we would be remiss if we did not also consider the policy of the legislature expressed through the 1987 amendments restructuring the workers' compensation system. *Id.* The 1987 Act was "intended to *streamline* the workers' compensation process and *expedite* review." *Id.* Requiring complete resolution of issues remanded to an ALJ prior to allowing judicial appeal would delay the process and complicate litigation. Consider Hall. If Hall was required to wait until after the ALJ complied with the Board's remand order before being able to appeal, the Board's rulings dismissing his neurocognitive claim and striking the lab report would remain non-final and

19

unappealable in the interim. However, these rulings by the Board are necessary considerations included in the ALJ's assessment of Hall's other claims on remand. Had Hall timely appealed the Board's decision on these issues and *succeeded*, the ALJ's decision on remand would, of course, be impacted. It is for this very reason that we have previously held that the jurisdiction of the factfinder in a workers' compensation case should be suspended pending the outcome of an appeal. *Pittsburg & Midway Coal Mining Co. v. Rushing*, 456 S.W.2d 816, 818 (Ky. 1969). Therefore, the current structure of the workers' compensation appeals process ensures the efficient use of resources by limiting the possibility of any unnecessary re-litigation of issues.

In reaching our determination, we also recognize that this Court has amassed twenty-six years of settled precedent on this issue and conclude that the legislature has acquiesced to our holdings through its own inaction. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977) ("Considerations of stare decisis weigh heavily in the area of statutory construction, where [the legislature] is free to change this Court's interpretation of its legislation."); *see also McCormack v. Louisville & Nashville R.R.*, 161 S.W. 518, 520 (Ky. 1913) ("Upon the principle of stare decisis, the decisions which have been rendered by a court will be adhered to by such court in subsequent cases, unless ... the rule or principle of law established by such decisions *has been changed by legislative enactment.*") (emphasis added). The doctrine of stare decisis "is the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. [It] permits society to

presume that bedrock principles are founded in the law, rather than in the proclivities of individuals." *Osborne v. Keeney*, 399 S.W.3d 1, 16-17 (Ky. 2012) (citing *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986)). Furthermore, the force of stare decisis is strongest in cases of statutory interpretation, *Neal v. United States*, 516 U.S. 284, 295 (1996), and "is at its weakest when we interpret the Constitution because our interpretation can be altered *only* by constitutional amendment or by overruling our prior decisions." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 328 (Ky. 2023) (quoting *Agostini v. Felton*, 521 U.S. 203, 235 (1997)) (emphasis added). Stare decisis directs us to adhere to prior decisions absent "sound legal reasons to the contrary." *Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984).

The requirement that we adhere to our past decisions is perhaps even more compelling in workers' compensation cases where our scope of review is expressly limited. We have held that in workers' compensation cases, our review is confined to "address[ing] new or novel questions of statutory construction, to reconsider[ing] precedent **when necessary**, or to review[ing] a question of constitutional magnitude." *W. Baptist*, 827 S.W.2d at 688 (emphasis added). Here, no such necessity to reconsider established precedent exists. Accordingly, not only would departure from our established precedent in this case disregard the clear intention of the legislature to treat workers' compensation differently from other administrative proceedings, but it would also frustrate the stability and consistency on which our legal system depends.

21

**B. The requirement that a party exhaust all administrative remedies prior to seeking judicial review does not apply to workers' compensation cases.**

While it is true that the common law generally requires exhaustion in administrative matters, and that KRS Chapter 13B codifies this rule, a careful review of the relevant statutes reveals that this principle does not apply to the workers' compensation process.

There is no requirement for exhaustion of remedies set forth in KRS Chapter 342. The explicit choice to include such a requirement in KRS 13B.140(2), but thereafter exclude it in KRS Chapter 342 is, indeed, significant. We have long acknowledged the legal maxim, "*expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of another." *Burgin v. Forbes*, 169 S.W.2d 321, 325 (Ky. 1943) (citation omitted). The purposeful inclusion of a requirement for exhaustion of administrative remedies in Chapter 13B, but exclusion in Chapter 342, denotes clear legislative intent that such requirement not apply to workers' compensation. Had the legislature intended exhaustion to apply to workers' compensation, it would have said so definitively.

Our decision in *Burroughs v. Martco*, 339 S.W.3d 461 (Ky. 2011) provides additional guidance. Although *Burroughs* contemplates a discrepancy between the Civil Rules and a workers' compensation statute, it illustrates our tendency to defer to rules outside KRS Chapter 342 only to the extent they are explicitly incorporated within the relevant statutory scheme. In *Burroughs*, an ALJ denied a claimant's motion to reopen brought under CR 60.01 and CR 60.02

22

because the motion was "unauthorized." 339 S.W.3d at 462. To address this issue, we looked to the statute on point, KRS 342.125, which limits the period for reopening a workers' compensation claim to four years after the original award or order granting or denying benefits. *Id.* Importantly, we noted that "[a]lthough the regulations that govern workers' compensation proceedings have adopted several of the Rules of Civil Procedure, they have not adopted CR 60.01 or CR 60.02. KRS 342.125(1) states the only grounds for reopening a final workers' compensation award." *Id.* at 465. Relying on the absence of an explicit adoption of CR 60.01 or 60.02 in KRS Chapter 342, this Court thereby upheld the ALJ's denial of the claimant's motion. *Id.*

Finally, further review of KRS Chapter 13B is telling. KRS 13B.020(1) sets forth the applicability of Chapter 13B's provisions to all administrative agencies: "The provisions of this chapter shall apply to all administrative hearings conducted by an agency, with the exception of those specifically exempted under this section." The statute then goes on to specifically exclude "[w]orkers' compensation hearings conducted under authority of KRS Chapter 342." KRS 13B.020(3)(e)(1)(a). The legislature has spoken clearly on this issue. A party need not exhaust all administrative remedies prior to seeking judicial review of a workers' compensation case.

23

## IV.    CONCLUSION

Our legislature unmistakably intended the workers' compensation process to be treated distinctly from other administrative processes, as evidenced by the enactment of KRS Chapter 342. In fact, the legislature explicitly grants the power of appellate review to the Board in KRS 342.285(2), thereby leaving little room for interpretation. Indeed, the workers' compensation process set forth in KRS Chapter 342 is robust; it contains over 100 statutes covering all facets of workers' compensation proceedings. However, at no point does it require a party to exhaust all administrative remedies prior to judicial appeal. Furthermore, KRS 13B.020(3) explicitly exempts workers' compensation proceedings from the requirements it imposes on other administrative agencies.

For the foregoing reasons, we find that the Board's July 22, 2022, Opinion was final and appealable, thus precluding Hall from review of his claims on a subsequent appeal. Accordingly, we affirm the Court of Appeals, and do not reach the merits of Hall's claims.

All sitting. VanMeter, C.J.; Bisig, Lambert and Nickell, JJ., concur. Thompson, J., dissents by separate opinion in which Conley, J., joins.

THOMPSON, J., DISSENTING: I respectfully disagree with following our flawed existing caselaw to defer to a decision by an administrative agency, the Workers' Compensation Board, as constituting the law of the case. This denies Hall any judicial review of the first two arguments in his workers' compensation appeal. I would overrule our precedent starting with *Davis v.*

24

*Island Creek Coal, Co.*, 969 S.W.2d 712, 713 (Ky. 1998), which deemed the Board as the equivalent of an appellate court, and led to the requirement in *Whittaker v. Morgan*, 52 S.W.3d 567, 569 (Ky. 2001), that the Board's interlocutory decisions would be respected as the law of the case if not immediately appealed and I would require exhaustion of administrative in workers' compensation proceedings.

As definitively stated in *Kendall v. Beiling*, 295 Ky. 782, 175 S.W.2d 489, 491 (1943), "[c]onstitutional courts are not subservient to statutory boards of administration." However, through a series of opinions, beginning in 1998 (after the General Assembly changed our workers' compensation law in 1987 to provide administrative review of ALJ decisions by the Board, with a petition for review with the Court of Appeals), our Court has disregarded the Kentucky Constitution's separation of powers between the branches of government, given away our inherent, constitutionally derived power, and made our Supreme Court subservient to the non-elected executive branch appointees who constitute the Workers' Compensation Board. We have wrongfully treated the Board as an *de facto* appellate court, whose prior decisions ought to be respected as law of the case, with absolutely no review by the Courts.

We have ignored the clear pronouncement in *Vessels v. Brown-Forman Distillers Corp.*, 793 S.W.2d 795, 798 (Ky. 1990), in considering the import of the new statute: "**Nothing in Section 109 [of the Kentucky Constitution] contemplates an administrative agency, much less the Workers' Compensation Board, as the equivalent of a court**." (Emphasis added). We

25

have ignored that the Board is a creation of statute which is housed within the executive branch of government. We have allowed the Board's prior action to deprive employees and employers alike to a proper court review.

The law of the case doctrine in Kentucky and elsewhere is defined in terms that exclusively apply its reach to court decisions. For example, *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982), states that "[t]he law-of-the-case doctrine is a rule under which an **appellate court**, on a **subsequent appeal**, is bound by a prior decision on a **former appeal** in the **same court**[.]" (Emphasis added). In *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017), the Ninth Circuit explained: "The law of the case applies . . . **only to decisions by the same or a higher court.**" Similarly, 21 C.J.S. Courts § 234 states: "The law of the case doctrine states that a **court's decision** on the applicable rule of law should continue to govern the same issue in later stages of the **same case**." (Emphasis added).

Black's Law Dictionary defines "law of the case" as "[t]he doctrine that when a point or question arising in the course of a lawsuit has been finally decided, the legal rule or principle announced as applicable to the facts governs the lawsuit in all its later stages and developments." It further provides to this quotation:

> "Once a court finally decides a contested point, that decision governs later stages of the dispute. That is, courts should treat the same litigants in the same case the same way throughout the same dispute. They have created a law of the case." Bryan A. Garner et al., *The Law of Judicial Precedent* 441 (2016).

LAW OF THE CASE, Black's Law Dictionary (12th ed. 2024).

26

Westlaw's Practical Law Glossary defines "Law of the Case Doctrine":

> The principle that an appellate court's decision on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal in the same case and with substantially the same facts. That is, under the law of the case doctrine, questions of law decided on appeal to a court of last resort usually govern the case throughout its later phases. The law of the case is meant to:
>
> - **Ensure that lower courts comply with the rulings of higher courts.**
> - Prevent re-litigation of settled issues.

Law of the Case Doctrine, Practical Law Glossary Item 7-501-7153 (emphasis added).

Our sister courts define law of the case consistently with such definitions. *See Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added) (the law of the case "doctrine posits that when a **court** decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *In re Christopher K.*, 841 N.E.2d 945, 955 (Ill. 2005) (emphasis added) ("[t]he law-of-the-case doctrine prohibits the reconsideration of issues that have been decided by a **reviewing court** in a prior appeal"); *Hopkins v. State*, 782 N.E.2d 988, 990 (Ind. 2003) (emphasis added) ("[t]he law of the case doctrine mandates that an **appellate court's** determination of a legal issue binds the trial court and ordinarily restricts the court on appeal in any subsequent appeal involving the same case and relevantly similar facts").

We have utterly rejected the universally accepted definition of law of the case in a bizarrely unique manner when it comes to workers' compensation

27

cases, by allowing the Board's interlocutory decisions—which were not immediately appealed—to be considered the law of the case with the power to bind us from taking any review. Only in Kentucky does the tail (the Board) wag the dog (the Supreme Court).

The notion that the law of the case doctrine only applies to constitutionally created courts is so ingrained in the jurisprudence of almost every other state and the federal government, that it is difficult to find cases even discussing whether this doctrine could apply in an administrative setting. However, when such a possible application to administrative decisions is discussed, it is soundly rejected.

I disagree with the rigid and unwarranted application of the law of the case doctrine in workers compensation cases, which essentially subsumes judicial independence by granting an executive branch administrative agency co-equal judicial power with our Courts, and then allowing an administrative decision to bind us. This unreasonably stymies our Courts' responsibility to conduct an independent judicial review of the Board's interpretation of the law, is utterly at odds with virtually all other jurisdictions, and is contrary to the purposes behind the law of the case doctrine.

We should both reject the application of the law of the case doctrine to administrative decisions and require exhaustion of the administrative process. By doing so we would regain our power, eliminate unnecessary piecemeal appeals, and benefit parties by providing them with a more prompt, cost-effective, and efficient resolution of their claims.

I observe that while the United States Supreme Court experimented with deferring to administrative agencies with the adoption of the *Chevron* doctrine[5] in 1984, that it has unequivocally rejected this practice as being inappropriate with the requirement that Courts are tasked to determine the law. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024). In a parallel to our odd application of the law of the case doctrine to a decision of the Board, the Court observed that *Chevron* was one of its "crumbling precedents" and "has been nothing more than a distraction from the question that matters: Does the statute authorize the challenged agency action?" *Loper Bright Enters.*, 144 S. Ct. at 2269.

Kentucky Revised Statutes (KRS) 342.290 provides that the Court of Appeals can review a decision of the Board. Whether this means that interlocutory or final decisions shall be reviewed is left to our discretion and does not obligate us to continue review of nonfinal decisions under the doctrine of law of the case.

Consideration of these issues by our Court should lead to the inevitable conclusion that our Court needs to make a correction to return stability and balance to the Workers' Compensation review process which existed prior to 1998. I would overrule our prior flawed precedent based on what is constitutionally required.

---

[5] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

The majority reasons that because Hall did not file an appeal to the Court of Appeals from the Board's first decision, it became the law of the case and barred consideration of relevant arguments he raised after the Board's second decision and then appealed. Hall raised three arguments before the Board in his first administrative appeal. He argued the Administrative Law Judge (ALJ) erred by: (1) adopting medical opinions which were factually corrupt; (2) erroneously excluding evidence of the lubricant mixture; and (3) rejecting the university evaluator's findings without a valid basis. These first two arguments were rejected by the Board, while the Board vacated and remanded on the third argument.

Our precedent would allow the Board's affirmance on arguments one and two to bar court review by the Judicial Branch because Hall failed to file an immediate petition for review with the Court of Appeals rather than waiting to see a new Board decision after remand.

Hall took the reasonable action of waiting for the outcome of the Board's remand to the ALJ and then, when he was dissatisfied with the ALJ's ultimate resolution, he appealed to the Board again. Only when the Board had made its final ruling rejecting Hall's argument, was the administrative process was complete. Hall then filed a petition for review of all of the Board's rulings with the Court of Appeals. Had this been any other type of administrative proceeding occurring anywhere other than in Kentucky's workers' compensation administrative process, Hall's action of waiting to seek review until after he had exhausted his administrative remedies would be an

30

eminently reasonable and logical choice, and in accordance with the law. It is only our flawed prior precedent which turns the matter on its head.

## I. OUR INHERENT JUDICIAL POWER, WHICH INCLUDES OUR ADOPTION OF LAW OF THE CASE DOCTRINE, DOES NOT APPLY TO THE ADMINISTRATIVE PROCESS AND CANNOT FORECLOSE COURT REVIEW OF THE BOARD'S INTERLOCUTORY DECISIONS.

The Court of Justice was created by the Kentucky Constitution. As such, the judiciary is imbued with inherent powers as a coequal branch of government, and it is from this power that our Courts are entitled to use and rely upon the law of the case doctrine. This doctrine only applies to final appellate judicial opinions and orders and not to quasi-judicial administrative decisions. When we allow administrative agencies such power, not only are we abdicating our constitutional role, but we are violating the separation of powers by allowing the executive branch to encroach on our responsibilities to determine what the law requires.

### A. The Inherent Powers of the Court Vests the Judiciary with the Right to Make its own Procedural Rules.

The current Kentucky Constitution, which contains the Judicial Article which became effective in 1976, grants our Courts certain powers. Under Section 109 of the Kentucky Constitution, "[t]he judicial power of the Commonwealth shall be vested exclusively in one Court of Justice." Under Section 116 of the Kentucky Constitution "[t]he Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction . . . and rules of practice and procedure for the Court of Justice."

31

However, the rulemaking power described in Section 116, only elucidates an already existing power, a power which dates back to 1792 when Article One of the First Constitution of Kentucky declared: "The powers of government shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: those which are legislative to one, those which are executive to another, and those which are judiciary to another."

As explained in *Craft v. Commonwealth*, 343 S.W.2d 150, 151 (Ky. 1961):

> The fountain source of [our highest court's rulemaking] power is in the act of division of powers among the three branches of the government (158 A.L.R. 707) and the grant of judicial power to the courts by the constitution carries with it, as a necessary incident, the right to make that power effective in the administration of justice.

*See* The Federalist No. 78 ("[t]he complete independence of the courts of justice is peculiarly essential in a limited Constitution").

Therefore, our Courts are "vested with certain 'inherent' powers to do that which is reasonably necessary for the administration of justice within the scope of their jurisdiction." *Smothers v. Lewis*, 672 S.W.2d 62, 64 (Ky. 1984). *See Degen v. United States*, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."). While some inherent judicial powers are vested with our highest court, other inherent powers apply to all appellate courts or trial level courts.[6]

---

[6] *See, e.g., Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023) (explaining the appellate courts' supervisory authority over lower courts includes the

Simply put, this inherent judicial power belongs to the Courts and not to any of the other branches of government.

> The control over this inherent judicial power . . . is exclusively within the constitutional realm of the courts. As such, it is not within the purview of the legislature to grant or deny the power nor is it within the purview of the legislature to shape or fashion circumstances under which this inherently judicial power may be or may not be granted or denied. This Court has historically recognized constitutional limitations upon the power of the legislature to interfere with or to inhibit the performance of constitutionally granted and inherently provided judicial functions.

*Smothers*, 672 S.W.2d at 64 (paragraph break omitted). *See generally Arkk Props., LLC v. Cameron*, 681 S.W.3d 133, 141-44 (Ky. 2023) (explaining that a law which stripped courts of their inherent power to administer justice in certain cases and to engage in appropriate judicial review was unconstitutional as it violated the separation of powers).

It is emphatically the role of the courts to resolve cases and controversies by exercising their independent judgment to interpret the laws while removed from the influence of the political branches of government, namely the executive and legislative branches. *Loper Bright Enters.*, 144 S. Ct. at 2257. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("[i]t is emphatically the province

---

power to "decide an issue that was not presented by the parties so long as the appellate court confines itself to the record"); *Phon v. Commonwealth*, 545 S.W.3d 284, 308 (Ky. 2018) ("[t]he trial court has inherent authority to correct an unlawful sentence, at any time"); *Ky. Bar Ass'n v. Brooks*, 325 S.W.3d 283, 284-86 (Ky. 2010) (stating that our highest Court "has long exercised its jurisdiction to sanction and enjoin non-attorneys from practicing law without a license" and justifying that this is part of its inherent power); *Norton v. Commonwealth*, 37 S.W.3d 750, 754 (Ky. 2001) (noting courts possess inherent power to punish contempt); *Hardin v. Jefferson Cnty. Bd. of Educ.*, 558 S.W.3d 1, 11 (Ky. App. 2018) (explaining circuit courts "have an inherent authority to judicially review . . . allegedly arbitrary administrative actions even absent an express statutory provision granting a right to appeal").

and duty of the judicial department to say what the law is"); The Federalist No. 78 (noting "[t]he interpretation of the laws is the proper and peculiar province of the courts" and that "[t]he courts must declare the sense of the law").

### B. The Law of the Case Doctrine Arises from the Inherent Power of the Court; The Legislature's Action or Inaction Cannot Affect the Judiciary's Inherent Judicial Power.

Inherent judicial power is so well known and so intrinsic to our understanding of how the judiciary functions, that no one questions that not all of our rules are to be found as the product of our Court's formal rulemaking as recorded in our civil, criminal and appellate rules. The law of the case doctrine is a prime example of that reality; it is a judicial invention and an example of judge-made law. *See, e.g., Lebron v. Sec'y of Florida Dept. of Child. & Fam.*, 772 F.3d 1352, 1360 (11th Cir. 2014) ("judge-made doctrine"); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("judicial invention"); *McGovern v. Kraus*, 200 Wis. 64, 227 N.W. 300, 305 (1929) ("court–made rule"). *See Smith v. Orr*, 855 F.2d 1544, 1552 (Fed. Cir. 1988) (noting that "[w]ell established among the jurisdictional powers of all appellate courts is the inherent power of the courts to determine for themselves, within the bounds of the law-of-the-case doctrine, whether they have subject matter jurisdiction over an appeal before them").

The law of the case doctrine was created by the judiciary to help judges efficiently manage the operation of the courts. *Lockert v. U.S. Dept. of Lab.*, 867 F.2d 513, 518 (9th Cir. 1989).

34

> The law of the case rule is a salutory rule, grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties, for otherwise litigation would be interminable and a judgment supposed to finally settle the rights of the parties would be only a starting point for new litigation.

*Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956). *See Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (internal quotation marks omitted) ("[t]he purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*").

A pair of two of United States Supreme Court cases are credited with creating the law of the case doctrine. *See Himely v. Rose,* 9 U.S. 313 (1809) (providing that that the Court would not revisit issues previously decided by it in a prior appeal); *Skillern's Ex'rs v. May's Ex'rs,* 10 U.S. 267 (1810) (providing that once issues are finally decided by a higher court, the lower court must follow such a mandate). However, Kentucky and likely other states already had a similar doctrine prior to that time. *See Rowland v. Craig*, 2 Ky. 330, 330 (1804) (declaring that our highest court would not revisit an issue settled by opinion in a prior term as "to examine into this error would be indirectly opening the former decree given by this court"); *Brown v. Crow's Heirs*, 3 Ky. 443, 456 (1808) (explaining it would only review a previously decided issue to determine if the lower court "has given a proper exposition to the decree of this court, and has carried it into effect, according to its true intent and meaning").

The law of the case doctrine as it exists today in Kentucky serves the needs of Courts in managing their dockets efficiently. "It is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Union Light, Heat & Power Co.*, 291 S.W.2d at 542. "The doctrine is reserved for situations where **the decision of a superior court within the same judicial organization** is binding on a subsequent trial court of that judicial organization or upon itself." *Sherley v. Commonwealth*, 889 S.W.2d 794, 797 (Ky. 1994) (emphasis added). *See Armstrong v. Est. of Elmore*, 647 S.W.3d 214, 217 (Ky. 2022). "[L]ower courts have a duty to obey the directions of higher courts." *Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1280 (10th Cir. 2024).

The law of the case rule serves litigants by ensuring the finality of appellate judicial decision on questions of law and "serves the equally important interest courts have in judicial economy by preventing the drain on judicial resources that would result if previous decisions were routinely subject to reconsideration." *Wright v. Carroll*, 452 S.W.3d 127, 130 (Ky. 2014). "It also prevents a dissatisfied party from presenting piecemeal issues to the appellate courts so that no decision is ever final." *Commonwealth v. Tamme*, 83 S.W.3d 465, 468 (Ky. 2002). *See TECO Mech. Contractor, Inc. v. Ky. Lab. Cabinet*, 474 S.W.3d 153, 158 (Ky. App. 2014) ("[t]hat doctrine is the mechanism by which matters once litigated and finally determined remain so").

The law of the case doctrine does not apply to make rulings by a trial court binding on an appellate court. *Dickerson v. Commonwealth*, 174 S.W.3d 451, 466–67 (Ky. 2005).

> **An appellate court's** function *is* to revisit matters decided in the trial court. When an appellate court reviews a matter on which a party failed to object below, its review may well be constrained by other doctrines such as waiver, forfeiture, and estoppel, as well as by the type of challenge that it is evaluating. But **it is not bound by [lower] court rulings under the law-of-the-case doctrine**.

*Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (internal citation omitted) (emphasis added).

The related "mandate rule . . . provides that on remand from a higher court a lower court must obey and give effect to the higher court's express or necessarily implied holdings and instructions." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). *See Inman*, 648 S.W.2d at 849.

Just as the law of the case doctrine cannot make a trial court's decision bind a higher appellate court, it also cannot not apply to bind another court system. *See Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 915 (Ky. 1998) (explaining that the law of the case doctrine does not apply to require that the Kentucky Supreme Court to be bound to a decision of the Sixth Circuit).

"Law of the case is a prudential doctrine . . . , not a jurisdictional one." *Brown*, 313 S.W.3d at 610. It "serves to direct a court's discretion, not limit its power." *Wright*, 452 S.W.3d at 130. Ultimately, "[t]he State Supreme Court is the final arbiter of the application of the doctrine of law of the case." *Sherley*,

889 S.W.2d at 797. Our Court, therefore, reviews the Court of Appeals application of the law of the case doctrine *de novo*. *Armstrong*, 647 S.W.3d at 217.

What should be evident from this review is that "law of the case" is a judicially created doctrine which is concerned with promoting judicial efficiency and finality regarding court cases and is not concerned with administrative actions at all. The *case* in law of the case refers to what has been established by an appellate court's final ruling which is binding on lower courts and appellate courts in subsequent appeals. It does not concern what an administrative board has decided which does not conclude the administrative process and which has never been reviewed by a court.

It makes no logical sense to treat the Board's interlocutory decisions as authoritative if not immediately appealed when trial courts' interlocutory decisions (subject to certain exceptions) cannot be appealed until there is a judgment disposing of all remaining claims. Kentucky Rules of Civil Procedure (CR) 54.02(2). A civil judgment readjudicates its interlocutory decisions; I do not understand why a Board's final decision should not do the same.

This is not to take anything away from the vital work that the Board conducts, but to appropriately categorize it according to its function. The administrative work of the Board in reviewing the opinions and orders of the ALJs is distinct from that of the Kentucky Courts in providing judicial review.

**C. The Separation of Powers Doctrine Both Prevents Administrative Decisions from having Preclusive Effect on Reviewing Courts and Requires that Courts Exercise Independent Judgment Rather than Deferring to Administrative Decisions.**

In *Loper Bright Enterprises*, the United States Supreme Court in overruling the *Chevron* Doctrine explained that while the views of the Executive Branch can inform the judgment of the Judiciary, it cannot supersede it; "[o]therwise, judicial judgment would not be independent at all." *Loper Bright Enters.*, 144 S. Ct. at 2258. The Court proceeded to explain that deferring to an agency interpretation was in fact at odds with the Framers' intent that the Judiciary would exercise independent legal judgment, a matter that is not fundamentally different in determining whether an administrative interpretation is correct, and that our Courts should not abdicate this authority to agencies. *Id.* at 2266.

Such an interpretation is entirely consistent with Kentucky's division of power between the three branches of government, with administrative agencies located within the executive branch. An administrative board's decisions and a failure to appeal from its non-final ruling cannot and should not bind reviewing courts. The very piecemeal appeals that the law of the case doctrine is designed to prevent, result from applying the law of the case doctrine to require premature interlocutory appeals from administrative actions.

Our sister Courts have opined that it is doubtful that the law of the case doctrine can be used to bind decision makers within an administrative process,

as explained by the Court in *Lockert v. U.S. Dept. of Lab.*, 867 F.2d 513, 517–18 (9th Cir. 1989):

> There is apparently no authority applying the law of the case doctrine to an administrative proceeding. This is not surprising, since it is doubtful that federal courts have the authority to extend the law of the case doctrine to proceedings involving non-judicial decisionmakers, such as the ALJ and the Secretary. Law of the case doctrine is purely judge-made; in the absence of statutory guidance, it makes sense for judges to develop doctrines to help manage efficiently their own affairs. *See* 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4478, at 788 (1981) ("Law of the case rules…. regulate judicial activity before final judgment."). The basis for extending this doctrine beyond "judicial affairs," however, is far from certain.

*See Ford-Clifton v. Dep't of Veterans Affs.*, 661 F.3d 655, 660 n.2 (Fed. Cir. 2011); *Giglio v. Fehlhaber Horn Corp.*, 97 A.D.2d 564, 565, 468 N.Y.S.2d 81, 83 (N.Y.S. 1983) ("the 'law of the case' theory . . . [has] no application to workers' compensation decisions at the administrative level"); *East Bench Irr. Co. v. State*, 5 Utah 2d 235, 239, 300 P.2d 603, 606 (1956).

What is even clearer is that the decisions of an administrative agency cannot bind a reviewing judiciary any more than a trial court's actions could. "The principle known as the law of the case is applied only to orders or judgments of a judicial tribunal;" it does not apply to "a mere administrative body [which is] not a court." *Loftis Plumbing & Heating Co. v. Quarles*, 188 Ga. 404, 407–08, 3 S.E.2d 725, 728 (1939). "[T]he law-of-the-case doctrine is preclusive only with respect to a prior ruling or decision of an appellate court as opposed to a trial court or administrative body." *Reynolds v. USF Reddaway, Inc.*, 394 P.3d 998, 1000 (Or. App. 2016).

In *Buck*, 869 F.3d at 1050, the Social Security Commissioner argued that in the absence of an appeal from a district court's first decision (which affirmed conclusive rulings by the ALJ regarding medical opinions but remanded to the ALJ on another issue), it became the law of the case and prohibited the review of that decision after the district court's second decision. The Ninth Circuit soundly rejected this argument, explaining: "**The law of the case applies . . . only to decisions by the same or a higher court.**" *Id.* (emphasis added). It explained that while the district court was not obligated to reconsider its prior ruling, "this Court is not bound to do the same" and could properly assess the arguments raised in the district court's first decision on the merits. *Id.*

In *Price v. Peachtree Elec. Services, Inc.*, 748 S.E.2d 229 (S.C. 2013), an appellate administrative body in a workers' compensation case issued two decisions: the first decision determined liability and remanded for a calculation of benefits due; the second decision affirmed the benefits awarded after remand. The South Carolina Supreme Court rejected the argument that the first decision had to be immediately appealed or a later appeal would be forfeited based on law of the case; it reasoned that the matter was interlocutory until the administrative process was completed. *Id.* at 230.

Virtually all of our sister Courts provide for unified court review of multiple prior decisions of a Board, rather than requiring an appeal from its first decision. *See Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 465 (6th Cir. 2022) (determining in a black lung case that the Court could review a Board's earlier determination despite the fact that it occurred prior to a remand and the

41

Board subsequently entered a second decision); *Riggle v. W.C.A.B. (Precision Marshall Steel Co.)*, 890 A.2d 50, 51–52 (Pa. Commw. Ct. 2006); *Ulbin v. Dir., Off. of Workers' Comp. Programs, U.S. Dept. of Lab.*, 132 Fed. Appx. 968 (3d Cir. 2005).

### D. The General Assembly's Failure to Act to Correct our Ceding of Power to the Workers' Compensation Board has No Persuasive, Let Alone Preclusive, Effect on Our Authority to Do So Now.

In 1998, we ceded our inherent judicial authority to the Executive Branch. It is unsurprising that the General Assembly deferred to our choice as it is our responsibility to properly exercise our judgment as to what our Constitution requires.

KRS 342.290 does not improperly impinge on judicial review of administrative workers' compensation decisions. It provides:

> The decision of the board shall be subject to review by the Court of Appeals pursuant to Section 111 of the Kentucky Constitution and rules adopted by the Supreme Court. The scope of review by the Court of Appeals shall include all matters subject to review by the board and also errors of law arising before the board and made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency.

As should be apparent from reviewing this rule, nothing in it requires that we defer to an interlocutory administrative decision by the Board and deny parties any judicial review because they failed to appeal before the administrative process was complete. I vehemently disagree with the majority opinion that legislative inaction as to our flawed precedent which began in 1998 is entitled to overcome our inherent discretion to determine our own rules of procedure. KRS 342.290 simply authorizes review by our Courts. It does not require that

we continue to conform our rulings to our faulty prior interpretation of what decisions of the Board may or may not be reviewed.

"[S]eparation of powers principles strictly prohibit the legislature from infringing upon the judiciary's exclusive power to make rules governing the practice of law, court procedures, and any exceptions thereto." *Turner v. Ky. Bar Ass'n*, 980 S.W.2d 560, 563 (Ky. 1998).

## II. THE BOARD IS PART OF AN ADMINISTRATIVE AGENCY AND SUBJECT TO ALL THE NORMAL RULES ASSOCIATED WITH ADMINISTRATIVE AGENCIES, RATHER THAN THE FUNCTIONAL EQUIVALENT OF A COURT OF APPEALS.

While the Board may initially appear to have the function of a reviewing court, nothing could be further from the truth. While it does review the opinions and orders of the ALJ, the ALJ and the Board are all part of one administrative agency and administrative process.

### A. The Board is a Statutory Creation of the General Assembly which is Located within the Executive Branch.

The Board is part of the Department of Workers' Claims in the Education and Labor Cabinet. KRS 342.215(6). The Commissioner of the Department of Workers' Claims is "under the direction and supervision of the secretary of the Education and Labor Cabinet[,]" KRS 342.0011(9), and the Secretary of the Education and Labor Cabinet is a member of the Governor's Executive Cabinet. KRS 11.065(1). Furthermore, the ALJs and members of the Board are appointed by the governor.[7] The fundamental reality is that a workers'

---

[7] KRS 342.213(1); KRS 243.215(2); KRS 342.230(2).

43

compensation claim wending its way from the ALJ to the Board is all part of one administrative process, rather than a judicial one.

In the *Vessels* decision, which was authored by Justice Combs, we definitively stated that the Board is not the equivalent of a court: "**Nothing in Section 109 [of the Kentucky Constitution] contemplates an administrative agency, much less the Workers' Compensation Board, as the equivalent of a court**." (Emphasis added). 793 S.W.2d at 798. We held that "workers' compensation claims that are first judicially reviewed in the Court of Appeals pursuant to KRS 342.290, and there ruled upon, may be appealed to the Kentucky Supreme Court as a matter of right pursuant to Section 115 of the Kentucky Constitution" which provides for the right to one appeal. *Vessels,* 793 S.W.2d at 798.

*Vessels*, which was decided in 1990 after the new workers' compensation legislation, is fundamentally inconsistent with *Davis* and *Morgan. Davis* was decided eight years later in 1998 and determined that the Board was equivalent to an appellate court. *Davis*, 969 S.W.2d at 713. *Morgan*, which was decided three years after *Davis*, determined that the law of the case doctrine applied to the Board's decisions. *Morgan*, 52 S.W.3d at 569. The justices apparently did not notice the inconsistency between these two lines of cases. If *Davis*, *Morgan*, and their progeny are not overruled, *Vessels* should be, because if the Board is an appellate court, review before the Court of Appeals would be the only review of right that is required.

**B. Court Review of Administrative Agency Decisions Requires**

44

**Prior Exhaustion of Administrative Remedies.**

The Courts in our Commonwealth should not review the workers'
compensation administrative process differently than it does for all other
administrative agencies. All of our other agencies have to exhaust their
administrative remedies. Allowing interlocutory appeals is at variance to what
the federal government and the overwhelming majority of the other states do
when reviewing the actions of their administrative agencies.

Similarly, circuit court proceedings must be complete before appellate
review is appropriate unless they qualify for an exception pursuant to CR
54.02. It makes no more sense to accept premature appeals from our circuit
courts than to accept premature appeals from the Board before the
administrative process is completed.

"As a general rule, exhaustion of administrative remedies is a
jurisdictional prerequisite to seeking judicial relief." *Commonwealth v. DLX,
Inc.*, 42 S.W.3d 624, 625 (Ky. 2001). The reasoning behind this requirement is
explained in *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cab.*, 133 S.W.3d
456, 471 (Ky. 2004):

> Exhaustion is generally required as a matter of preventing
> premature interference with agency processes, so that the agency
> may: (1) function efficiently and have an opportunity to correct its
> own errors; (2) afford the parties and the courts the benefit of its
> experience and expertise without the threat of litigious
> interruption; and (3) compile a record which is adequate for
> judicial review. In addition, an agency has an interest in
> discouraging frequent and deliberate flouting of the administrative
> process. The exhaustion doctrine does not preclude, but rather
> defers, judicial review until after the expert administrative body
> has built a factual record and rendered a final decision. By
> honoring the exhaustion doctrine, courts avoid interfering with the

45

administrative process, and the initial reviewing court benefits from the specialized knowledge of the agency. With increasing case loads and demands upon the courts, it is important to note that the rule requiring exhaustion also promotes judicial economy by resolving issues within the agency, eliminating the unnecessary intervention of courts.

(Footnotes, quotation marks, and brackets omitted). These precepts apply with equal force to limit premature and piecemeal review of decisions issued by any administrative agency.

When a matter still within the administrative process is remanded for additional administrative proceedings, administrative remedies have not been exhausted as the party's claims are "still percolating through administrative channels." *Hardin v. Jefferson Cnty. Bd. of Educ.*, 558 S.W.3d 1, 10 (Ky. App. 2018).

It is properly within our power to require exhaustion of the administrative process. The General Assembly's silence on this matter is of no import.

Our Courts broadly favor the mandatory nature of the exhaustion of administrative remedies. *See generally Wayne Cnty. Hosp., Inc. v. WellCare Health Ins. Co. of Ky., Inc.*, 576 S.W.3d 161, 166–67 (Ky. App. 2018) (requiring exhaustion of a private insurance company's grievance procedure). I am convinced that requiring exhaustion of administrative remedies within the workers' compensation administrative process would make the system more efficient and forward the purposes of the Act. *See infra.*

The overwhelming majority rule among our sister jurisdictions is that workers' compensation matters require exhaustion. *See* Exhaustion of Administrative Remedies, 3 Modern Workers Comp. § 313:10 ("[t]he basic rule that administrative remedies must be exhausted before one can seek judicial relief applies in workers' compensation cases"). *See, e.g., Caraballo v. City of Jersey City Police Dep't,* 204 A.3d 254, 260 (N.J. 2019); *City of Houston v. Rhule,* 417 S.W.3d 440, 443 (Tex. 2013); *Bullock v. AIU Ins. Co.,* 995 So. 2d 717, 720-23 (Miss. 2008); *Trujillo v. Pacific Safety Supply,* 374, 84 P.3d 119, 133 (Or. 2004). Nothing in the majority opinion persuades me that this rule should not likewise apply in Kentucky.

I conclude there is no reasonable justification for exempting the workers' compensation administrative process from such exhaustion requirements.[8] The mere fact that our previous case law did so, without any consideration or analysis as to whether exhaustion should be required, should not bind us. I also note that in altering the administrative process to add a level of review within it, the General Assembly **did not** include any statutory language authorizing direct judicial review from a Board decision remanding to the ALJ for further action.

---

[8] *See Renovared Energy Resources, Inc. v. Riley,* 2006-CA-001067-WC, 2006 WL 3759722, at *5 (Ky. App. Dec. 22, 2006) (unpublished) (explaining that in the absence of our caselaw carving out a different rule for court review of workers' compensation cases from the Board, interlocutory workers' compensation cases would not be reviewable until they are final with all administrative remedies exhausted, pointing out the inefficiency of requiring premature judicial review, and requesting that we revisit our flawed precedent). I cite this case not as authority but because I agree with its reasoning and properly wish to credit this prescient critique our workers' compensation caselaw and the long-delayed answer to this request that we revisit it.

As explained in *Kentucky State Police v. Scott*, 529 S.W.3d 711, 716 (Ky. 2017), while there are three exemptions from the requirement that administrative remedies must be exhausted prior to seeking judicial review, if none of them apply, then the reviewing court is deprived of subject matter jurisdiction. A general pronouncement in KRS 342.290 that the Court of Appeals has the right to review the decisions of the Board, subject to our rule, does not specifically authorize direct judicial relief from interlocutory decisions of the Board. The General Assembly's silence on this topic in the statute authorizing judicial review and the rest of KRS Chapter 342 leads inexorably to the conclusion that exhaustion is required under the general common law requirement.

### III. THE PIECEMEAL REVIEW WHICH RESULTS FROM TREATING THE BOARD AS EQUIVALENT TO AN APPELLATE COURT, HARMS THE PARTIES TO WORKERS' COMPENSATION CASES.

Our current method of allowing appeals before the administrative process is concluded, has promoted delay, inefficiency, and piecemeal review. Anything that delays a final decision as to whether a worker is entitled to workers' compensation benefits is at odds with the purposes behind our workers' compensation system.

> "The primary purpose of the Workers' Compensation Act is to aid injured or deceased workers" and statutes are to be interpreted "in a manner that is consistent with their beneficent purpose." *Ky. Uninsured Employers' Fund v. Hoskins*, 449 S.W.3d 753, 762 (Ky. 2014) (citations omitted). The overarching purpose of the workers' compensation chapter "is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault," thereby enabling them "to meet their essential economic needs and

48

those of their dependents." *Adkins v. R & S Body Co.*, 58 S.W.3d 428, 430-31 (Ky. 2001) (citations omitted).

*Kindred Healthcare v. Harper*, 642 S.W.3d 672, 679 (Ky. 2022).

The workers' compensation statutes and regulations focus on a prompt resolution of workers' compensation claims. *See* KRS 342.270; KRS 342.285; 803 Kentucky Administrative Regulations (KAR) 25:010 (all providing deadlines). Generally, the ALJs and the Board act promptly and efficiently to resolve claims, with delays in that process often attributable to the parties.

The process for judicial review, which starts at the Court of Appeals followed by a right of appeal to our Court, can be slow. Given this reality, it is problematic to have the resolution of the workers' compensation process further delayed by repeated appeals of only part of an administrative decision, when the matter still must return to the ALJ for further reevaluation.

As stated most elegantly by Judge Hill in *Seidl v. Willens*, 411 S.W.2d 29, 31-32 (Ky. 1967):

> Compensation proceedings, unlike suits based on negligence for death, disability and pain, are intended to take care of lost or disabled industrial workers and 'their dependents,' and it is important to society that such proceedings be determined speedily and expeditiously without multiplicity of action or remedy. In the event a disabled worker or his dependents must . . . await the trial of his claim by piecemeal through the [process of court review] on every objectionable order of the Board, regardless of the element of finality, great hardship may result. **We consider it a better policy that all the issues be determined by the Board in its final order and a one-package appeal provided therefrom.**

(Emphasis added). Yet, this "one-package appeal" is not what the parties are currently receiving.

*Popplewell's Alligator Dock No. 1, Inc.*, 133 S.W.3d at 471, states that requiring administrative exhaustion serves the important purpose of promoting judicial economy in the face of increased caseloads and demands upon the judiciary by eliminating unnecessary intervention by the courts. *See Rhame v. Charleston Cnty. Sch. Dist.*, 412 S.C. 273, 277, 772 S.E.2d 159, 161 (2015) (administrative exhaustion "promotes judicial economy and avoids unnecessary appeals"); *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn. 1997) (quoting 2 Am.Jur.2d *Administrative Law* § 505) (administrative exhaustion prevents the "premature interference with agency processes, so that the agency may . . . function efficiently and have an opportunity to correct its own errors"); *Smoke v. City of Seattle*, 937 P.2d 186, 191 (Wash. 1997) (explaining "[o]ne of the primary purposes of the doctrine to exhaust administrative remedies is to provide a more efficient process and allow the agency to correct its own mistakes").

Requiring exhaustion of administrative remedies goes hand in hand with rejecting the application of law of the case to the decisions of an administrative agency. The law of the case doctrine is supposed to prevent piecemeal review and promote judicial economy. *Tamme*, 83 S.W.3d at 468; *Wright*, 452 S.W.3d at 130. However, when we apply the law of the case doctrine to the Board's earlier decisions it forces parties to engage in defensive piecemeal appeals.

Piecemeal appeals delay the ultimate resolution of entitlement to benefits, thereby interfering with workers receiving prompt compensation for their injuries so that they can meet their essential economic needs. Requiring

50

parties to engage in multiple appeals adds to the overall cost of attorney representation. It is also inefficient for our Courts to engage in repeated unnecessary reviews in a single case.

I am not just theorizing that such delays occur in workers' compensation cases from failing to require exhaustion; I have found examples of this occurring to claimants Roger Hall, Richard Cole, and Dottie Ramey. Each of them experienced lengthy delays in the finalization of their workers' compensation claims based on their cases being appealed to our Court before final resolution of their administrative proceedings.[9] Roger Hall had more than a seven-year delay between applying for mesothelioma benefits and ultimate resolution by the Supreme Court. Cole had a six-year delay between applying for reopening for permanent partial disability benefits and receiving his last Supreme Court opinion (which did not yet conclude the case as the Board was ordered to remand for the ALJ to make more definite factual findings). Ramey had more than an eight-year delay between applying for benefits and the

---

[9] *See Letcher Cnty. Bd. of Educ. v. Hall*, 671 S.W.3d 374 (Ky. 2023); *Letcher Cnty. Bd. of Educ. v. Hall*, 2020-CA-1404-WC, 2022 WL 2375143 (Ky. App. July 1, 2022) (unpublished); *Letcher Cnty Bd. of Educ. v. Hall*, 576 S.W.3d 123, 125-26 (Ky. 2019); *Letcher Cnty. Bd. of Educ. v. Hall*, 2018-CA-000788-WC, 2018 WL 5778765 (Ky. App. Nov. 2, 2018) (unpublished); *Cole v. KY Fuels Corp.*, 2022-SC-0427-WC, 2023 WL 4037580 (Ky. June 15, 2023) (unpublished); *Cole v. KY Fuels Corp.*, No. 2022-CA-0558-WC, 2022 WL 3721740 (Ky. App. Aug. 26, 2022) (unpublished); *Cole v. KY Fuels Corp.*, No. 2020-SC-0548-WC, 2021 WL 4489018 (Ky. Sept. 30, 2021) (unpublished); *KY Fuels Corp. v. Cole*, No. 2019-CA-1519-WC, 2020 WL 6112924 (Ky. App. Oct. 16, 2020) (unpublished); *Lynn v. Ramey*, 2017-SC-000230-WC, 2018 WL 6567283 (Ky. Dec. 13, 2018) (unpublished); *Lynn v. Ramey*, 2016-CA-001334-WC, 2017 WL 1806760 (Ky. App. May 5, 2017) (unpublished); *Ramey v. Lynn*, 2011-CA-001603-WC, 2012 WL 4491138 (Ky. App. Sept. 28, 2012) (unpublished). We do not cite these unpublished cases as any kind of authority but simply to provide examples of how multiple appeals at various junctures can result in lengthy delays.

finalization of her award. Such delays can only serve to hurt injured workers who are ultimately proved to be entitled to receive benefits. While sometimes workers' compensation matters must come before our Courts more than once, we should not add to such delay by mandating premature review by our Courts of non-final matters under the guise that a ruling by the Board serves as a judicial decision that can take away vested rights.

Given these examples, I strongly disagree with the majority opinion that "[r]equiring complete resolution of issues remanded to an ALJ prior to allowing judicial appeal would delay the process and complicate litigation." This is incorrect and such pronouncement is at odds with the Court's experience.

Usually when a matter is remanded from the Board to an ALJ, a resolution and subsequent appeal to the Board can be resolved within months, whereas a petition to the Court of Appeals and appeal to our Court can take years to be resolved. Therefore, requiring that an appeal be taken from the Board's first decision, even though there are still matters that would need to be remanded to the Board based on that decision, does the opposite of streamlining and expediting review. Two or more required trips to the Court of Appeals and then this Court certainly delays a resolution, and it is more efficient to consider all of the rulings of the Board after its final ruling which concludes the case, rather than to have multiple required appeals.

While our prior precedent provides a test for how parties can determine when to appeal when the ultimate outcome of the workers' compensation case was not yet resolved, this creates a trap for the unwary as it is not consistent

with our other law relating to finality, exhaustion, and law of the case as only Kentucky defines it.[10] It is understandable that Hall's counsel could be caught unaware and believe that all the issues previously raised before the Board and rejected could be reviewed by the Court of Appeals and then by our Court after the administrative process was complete. Additionally, these decisions place pressure on attorneys to defensively appeal from any possible final order which decided any issue against their clients, with its concomitant expense and delay, to prevent waiver of the opportunity to do so later and attendant risk of being accused of malpractice.

## IV. CONCLUSION

I have the utmost respect for the doctrine of *stare decisis*, which "directs us to 'stand by' our previous decisions unless there are sound legal reasons to the contrary." *Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984). "Yet, this rule is not inflexible, nor is it of such a nature as to require perpetuation of error or illogic." *D & W Auto Supply v. Dep't of Revenue,* 602 S.W.2d 420, 424 (Ky. 1980).

> The doctrine of stare decisis does not commit us to the sanctification of ancient or relatively recent fallacy. While we recognize this Court should decide cases with a respect for precedent, this respect does not require blind imitation of the past or unquestioned acceptance ad infinitum. Rather, in many ways, respect for precedent *demands* proper reconsideration when we find sound legal reasons to question the correctness of our prior

---

[10] *See, e.g., Wilson v. Anthem Cos., Inc.*, 2003-CA-000786-WC, 2003 WL 22064333, at *2–3 (Ky. App. Sept. 5, 2003) (unpublished) (denying review of an issue decided by the Board in an initial appeal as law of the case when the appeal did not take place until a second appeal from the Board following a new decision by the ALJ after remand). This case is cited as an example rather than as authority for any proposition.

analysis.

*Morrow v. Commonwealth*, 77 S.W.3d 558, 559 (Ky. 2002) (omitting brackets, footnotes and quotation marks).

Given the problems which have arisen from our flawed prior caselaw and the lack of justification for deferring to a prior decision of the Board, which is not rooted in either our common law or a reasonable statutory interpretation of our workers' compensation statutes, I would overrule the entire line of flawed cases and their progeny: *Davis, Morgan,* and *Hampton v. Flav-O-Rich Dairies,* 489 S.W.3d 230 (Ky. 2016).

This would return us to the general reasoning of *Stewart v. Lawson,* 689 S.W.2d 21 (Ky. 1985) (overruled by *Davis*), which would need to be updated as it addressed the prior composition of the workers' compensation administrative process and judicial review.

I would also explicitly reject any application of the law of the case doctrine to administrative decisions and require exhaustion of the entire administrative process before I would allow the parties to seek review from the Court of Appeals.

We need a "one-package appeal" from a final order of the Board. *Seidl,* 411 S.W.2d at 32. Where the matter has been returned to the ALJ for further decision-making, the ultimate outcome of the administrative process has not been resolved and there is no finality.

Accordingly, I would proceed to review all of Hall's arguments on the merits.

Conley, J., joins.


COUNSEL FOR APPELLANT, TERRY HALL:

Grover Simpson Cox
Cox & Cox Law Office PLLC

COUNSEL FOR APPELLEE, BPM LUMBER, LLC:

Felicia Ann Snyder
Snyder Law Office, PLLC

APPELLEE, JONATHAN R. WEATHERBY:

Jonathan R. Weatherby
Administrative Law Judge

APPELLEE, WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey, Chairman